G2QJJONC                    Teleconference

1 │ UNITED STATES DISTRICT COURT
  │ SOUTHERN DISTRICT OF NEW YORK
2 │ ------------------------------x
3 │ ROBERT JONES
  │ #141-15-02468
4 │ NYSID #04757650Q
  │ Otis Bantum Corr. Center
5 │ 1600 Hazen Street
  │ E. Elmhurst, NY  11370,
6 │
  │                    Plaintiff,
7 │
  │           v.                        14 Civ. 06402 KPF
8 │
  │ JAMES MEEHAN, "NYPD" Police
9 │ Detectives Shield #6445, et al.,
10│                    Defendants.
11│ ------------------------------x
12│                                    February 26,2016
  │                                    10:10 a.m.
13│
14│ Before:
15│                    HON. KATHERINE POLK FAILLA,
16│                                         District Judge
17│
18│                         APPEARANCES
19│ WINSTON & STRAWN, LL (NY)
  │       Attorneys for plaintiff
20│ BY:  JESSICA GREER MARY GRIFFITH, Esq.
  │                Of counsel
21│
22│ MICHAEL A. CARDOZO,
  │ Corporation Counsel for the
  │ City of New York
23│       100 Church Street
  │       New York, New York  10007
24│ MARIA FERNANDA DeCASTRO,
  │       Assistant Corporation Counsel
25│

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          (Teleconference in Chambers)

2          THE COURT:  Good morning to both of you.

3          Is Ms. Griffith not participating in the call today?

4          MS. DeCASTRO:  I thought Ms. Griffith was just

5   appearing for the limited purpose of writing the motion for

6   plaintiff on the affirmative defenses.

7          THE COURT:  It would be my view if she went through

8   the trouble of writing it, she should at least be able to argue

9   it, no?

10          MS. DeCASTRO:  I apologize, your Honor.  Yes, I

11  realize she should be participating.  I have not heard from her

12  regarding this at all.  I should try to get her on the phone if

13  it please the court.

14          THE COURT:  I am just wondering, I do want to hear

15  from Mr. Jones, and I will hear from both of you about the

16  other matters in the case.  To the extent we are talking about

17  the motion to strike, that is, in fact, something on which I

18  specifically wanted their input, so I certainly thought at

19  least they would be invited to participate.

20          Let me back up a moment.  Are they not aware of this

21  proceeding this morning?  There was an order that was issued,

22  was it not?

23          MS. DeCASTRO:  Yes, there was.  I don't know if -- in

24  my limited conversations with her, I guess she probably didn't

25  realize at the initial conference we would be discussing the

G2QJJONC                    Teleconference

1   motions that were filed.

2           THE COURT:  Okay.  Ms. DeCastro, let me explain.

3           Obviously, it took some doing on your part to be able

4   to arrange a call with Mr. Jones.  I know that those can't

5   happen without some things happening in the background, but

6   certainly it would have been and it is my preference to have

7   Ms. Griffith participate in this as well.

8           Is there a way you can put me and Mr. Jones on hold

9   and see if you cannot reach Ms. Griffith?

10          MS. DeCASTRO:  Of course, your Honor.

11          THE COURT:  Okay.  Just a second.  I am here.  Thank

12  you.  Mr. Jones, I will thank you in advance for your patience

13  as well, sir.

14          MR. JONES:  Thank you.  I appreciate that, Judge.

15          Thank you.

16          (Pause)

17          (Off-the-record discussion)

18          MS. GRIFFITH:  How are you?

19          THE COURT:  Ms. Griffith, this is Judge Failla.  Good

20  morning to you, and I am sorry to give you absolutely no notice

21  about this.  There is a call this morning in the Jones versus

22  Meehan case.  You were kind enough to help us on the issue of

23  the motion to strike affirmative defenses, and given that you

24  had done all the work, I wanted to know if you also wanted to

25  be present for this call?

1          MS. GRIFFITH:  Sure, I would be happy to attend the

2     call.  I know I didn't think I was responsible and I didn't

3     know if you wanted me to participate in the call since we were

4     only appointed on the limited matter we briefed, but I am happy

5     to partake.

6          THE COURT:  I am happy to have you.  All right.

7          Here is what I would like to do, and I am going to

8     begin by asking Ms. DeCastro before I forget, Ms. DeCastro, at

9     the end of this proceeding or after this proceeding has

10    concluded, I am going to ask you please to obtain a transcript

11    of this matter, and I am going to ask you to send a copy,

12    please, to Mr. Jones.  Ms. Griffith will get a copy

13    automatically because she is on the docket, and I will get a

14    copy automatically because I am receiving these entries as

15    well.  Can you please do that?

16         MS. DeCASTRO:  Yes, of course, your Honor.

17         THE COURT:  Thank you so much.  Mr. Jones, I am going

18    to begin with you.  Good morning to you, sir.

19         MR. JONES:  Good morning, Judge.

20         THE COURT:  Mr. Jones, there are a couple of issues on

21    the docket for us today and one of them is your motion from I

22    believe October of last year to strike the affirmative

23    defenses.

24         Now, sir, you raised some very interesting issues, as

25    you saw, and so what I did, because I wanted sort of get the

1    most current legal thoughts on the issue, I asked for Ms.

2    Griffith and her law firm to be appointed to assist you in this

3    regard.  I am going to ask her to talk about the particular

4    order that I issued asking for additional briefing.  Is that

5    all right with you, sir, if I have Ms. Griffith argue your side

6    on the issue of the motion to strike?

7           MR. JONES:  Yes, Judge, I would appreciate that.

8           Thank you.

9           THE COURT:  Ms. Griffith, first of all, I thank you, I

10   thank your law law firm for assisting in this matter.  We on

11   this side, the Court side, appreciate the care and the

12   attention to the work you did.  Ms. DeCastro, we like your

13   work, too, but obviously we didn't order you to do something.

14   So you have a different thank you from us.

15          Ms. Griffith, while I have you on the line and without

16   meaning to put you on the spot, I do want to make sure I

17   understand the arguments a little bit.  Are you prepared to

18   talk a little bit about your brief?

19          MS. GRIFFITH:  I would probably prefer to refresh

20   myself before giving oral argument on the brief, if that is

21   possible at all?  I am sorry, I didn't realize the call was

22   happening this morning.

23          THE COURT:  Of course.  I guess the issue this is.

24          Unfortunately, because of Mr. Jones' station and where

25   he is right now, it is a little difficult to set up these

1    calls.  Perhaps what I will do then is why don't you look at

2    your brief as I am talking to Ms. DeCastro.  Does that make

3    sense?

4              MS. GRIFFITH:  Sure.  Thank you.

5              THE COURT:  Thank you very much.

6              Ms. DeCastro, let me then talk to you.  One of your

7    principal arguments is that there are textural differences.  Is

8    there really?  Do they really make a difference for the purpose

9    of the standard I should be using in considering affirmative

10   defenses?

11             MS. DeCASTRO:  Well, your Honor, it is the city's

12   position that it does.  The standards are that a person under 8

13   (a)(2) is the person must -- pleadings -- sorry.  I apologize.

14             THE COURT:  Start again.

15             MS. DeCASTRO:  -- requires the pleadings show --

16             THE COURT:  Ms. DeCastro, because we are on the phone,

17   I will ask you to speak a little slower so the Court Reporter

18   can get down everything you're saying.

19             Thank you so much.

20             MS. DeCASTRO:  Yes, your Honor, of course.

21             It is the city's position it does make a textural

22   difference because Rule 8 (a)(2) requires pleadings show how

23   they are entitled to relief.  By contrast, Rule 8 (c)(1), which

24   governs affirmative defenses, merely states that a party has to

25   state the defense.  It doesn't require that they show how

1    they're entitled to that defense.

2          THE COURT:  All right.  Here is one Judge's thoughts

3    on the issue.  It seems to me that to the extent you're arguing

4    that if plaintiffs need more information, they can get it

5    through discovery, I suppose that can be said as well to

6    defendants, who can get more information during discovery about

7    the plaintiff's claims, and yet we still have Twombly and

8    Iqbal.

9          I think to my mind, the stronger argument -- and I

10   want to explore it with you a little bit more -- is your

11   argument that the purposes of each or the relationship of each

12   type of pleading to discovery obligations is different.  So I

13   think I am understanding you to say that while a complaint

14   triggers the discovery process, what you've got in the context

15   of an affirmative defense is merely an expansion of or a gloss

16   on the discovery process.

17         Could you speak a little bit to me more about that

18   point, first of all, whether I have understood it correctly;

19   and, second of all, whether if I have, how that makes a

20   difference in the amount of detail that you are seeking.

21         MS. DeCASTRO:  Yes, your Honor, I can speak to that.

22         First of all, as your Honor knows especially in these

23   kinds of 1983 cases, plaintiffs have up to three years from the

24   time the action arose to bring, from the time the claim arose

25   to bring a claim.  That gives plaintiffs three years to develop

1   their case, to gather enough evidence necessary to show how

2   they're entitled to relief, whereas defendants merely get 21

3   days from the date they're served with a complaint to assert

4   affirmative defenses.

5          That limited amount of time rarely gives defendants

6   enough time to fully explore all of the affirmative defenses

7   that need to be stated.  A lot of these affirmative defenses

8   are ones we would waive if not pled.  I think the differences

9   between the positions that plaintiffs are in when they file the

10  case and the position the defendant is in when they answer a

11  complaint are justified that that standard not be extended to

12  apply to affirmative defenses.

13         THE COURT:  Ms. DeCastro, have you read Iqbal and

14  Twombly in connection with the papers you submitted to me?

15         MS. DeCASTRO:  Yes, your Honor.

16         My understanding of the court's interpretation of

17  Iqbal and Twombly -- certain courts -- is that Iqbal and

18  Twombly was more concerned about the fact that, as you stated,

19  discovery, the complaint does open the doors of discovery,

20  whereas affirmative defenses, while they may be inquired into

21  in discovery, they do not unlock these doors.

22         THE COURT:  All right.  I am recalling correctly that

23  Iqbal and Twombly spoke not at all to the issue of affirmative

24  defenses; that's correct?

25         MS. DeCASTRO:  Yes, your Honor.

1    THE COURT:  Is there something in Iqbal and Twombly

2    other than what you have just mentioned about the relationship

3    to discovery that suggests that its reasoning is inapplicable

4    or should not be applied to affirmative defenses?  Let me back

5    up a little bit and explain that a little bit better.

6    My understanding of sort of the principles of Iqbal

7    and Twombly are that I am to accept all well-pleaded

8    allegations as true and I am to determine whether these

9    well-pleaded allegations suffice to state a claim that is

10   plausible.  So is there something about the rationale for these

11   two decisions that does not lend itself or does not translate

12   into the context of affirmative defenses?

13   MS. DeCASTRO:  Well, your Honor, honestly, Iqbal and

14   Twombly, they're concerned about pleading standards could

15   possibly extend itself to affirmative defenses, is we are just

16   plainly reading the decisions of not considering what the

17   court's reasoning was in establishing a heightened pleading

18   standard.

19   However, it is defendants' position that should the

20   court explore this again, we do not believe that given the

21   court's concerns in Iqbal and Twombly, it would apply to

22   affirmative defenses.

23   THE COURT:  All right.  You would agree with me, would

24   you not, that I ought to consider Rule 8 in the affirmative

25   defenses?  In fact, I am directed to consider Rule 8, correct?

1          MS. DeCASTRO:  Yes, your Honor.

2          THE COURT:  Is it your view that the standards should

3     be fair notice?

4          MS. DeCASTRO:  Yes, your Honor, but I think that the

5     affirmative defenses we have asserted provide fair notice of

6     the defenses that we intend to raise.

7          THE COURT:  Okay.  Let me hear from you a little bit

8     more about that because I'm going to look at them right now.

9          One of them, the seventh affirmative defense, is a

10    failure to comply with New York General Municipal Law, Section

11    50 (e), and I presume the remainder of that section.  Is it

12    your view that Mr. Jones needs no further understanding of the

13    nature of your affirmative defenses?

14         MS. DeCASTRO:  Well, your Honor, I guess that

15    provision, at least the reasons we asserted are that we have

16    not, although Mr. Jones attached a notice of claim to his

17    complaint, we have not been able to find that notice of claim

18    actually filed with the Comptroller's Office.  While I

19    understand that Mr. Jones is pro se, so it is harder for him to

20    understand General Municipal Law 50 and as to what that would

21    entail --

22         THE COURT:  Yes.

23         MS. DeCASTRO:  -- that is an affirmative defense we

24    asserted.  At the time we asserted it, it wasn't clear to us

25    even if he had done a 50 (h) hearing or anything of that

1    nature, and that requires a little bit of more time and more

2    investigation, which goes back to our point we are only given a

3    limited amount of time to answer these complaints at the time

4    we are served with them.

5         THE COURT:  Are you suggesting then the affirmative

6    defenses are a place-holder in the first instance?

7         MS. DeCASTRO:  I am not suggesting that, but what I am

8    saying is we tried to assert the affirmative defenses, given

9    the case as we see them and at the time we get them, we

10   understand to be reasonable and that can be asserted.

11        THE COURT:  Ms. Griffith, can I turn to you?

12        MS. GRIFFITH:  Sure.

13        THE COURT:  Thank you so much.

14        I am going to begin with one of the same questions I

15   just asked your adversary, which is understanding sort of the

16   rationale of Twombly and Iqbal do concern well-pleaded

17   allegations, well-pleaded facts that lent themselves to claims

18   and whether those claims are plausible, why should I extend

19   that into affirmative defenses?

20        MS. GRIFFITH:  Your Honor, I think the need for more

21   specific pleadings should be extended to affirmative defenses

22   for much the same reason that they're required for normal

23   defense pleadings and for pleadings contained in the complaint.

24        To start with dealing with the policy considerations,

25   the court must always be conscious of efficiencies and cost

1    reduction.

2              THE COURT:  I will ask you to speak slower as well,

3    please.  Thank you so much.

4              I do hear what you're saying, but is it really

5    efficient to do a motion to strike?

6              My just under three years of experience as a Judge has

7    suggested to me that there are very few of these motions, and I

8    am not sure that they really do impact the nature of the

9    discovery sought, but is it your position that, in fact, this

10   would have an impact on reducing the costs of litigation, and

11   thereby making them more efficient?

12             MS. GRIFFITH:  Well, your Honor, I think this would be

13   a prime example of a case where this would be useful, where the

14   affirmative defenses pled are really standard boilerplate

15   affirmative defenses such as, if I recall correctly, the one

16   concerning the statute of limitations.

17             It would be quite simple for the defendants asserting

18   the statute of limitation affirmative defense to have just

19   provided which, what is the time limit, what claims they're

20   alleging in the affirmative defense.  This way it would help

21   the plaintiff understand where the affirmative defenses are

22   coming from and where discovery should start.

23             THE COURT:  I want to follow up on that because that

24   is an affirmative defense that is of interest to me as well.

25             If you had drafted these using the standards that you

1    wish me to adopt, what would you have said for the 11th

2    affirmative defense?

3          MS. GRIFFITH:  Your Honor, I apologize.  I did not

4    know the call was going on right now.  I don't have the

5    affirmative defense right --

6          THE COURT:  I am sorry.  That is fine.  I sprung this

7    on you and I know that.  You said the 11th affirmative defense

8    is plaintiff's claims are barred by the applicable statutes of

9    limitations.  So my question to you is, if you had done this

10   defense, how much more explicit, how much more detailed do you

11   think it should have been?

12         MS. GRIFFITH:  Well, I know that plaintiff is alleging

13   a variety of claims in his complaint, and so I think the

14   affirmative defense would have had to address the time

15   limitations for the different claims that plaintiff included in

16   his complaint.

17         THE COURT:  I see.  So would you have specifically

18   wanted them to say why it was barred by the statute of

19   limitations?

20         MS. GRIFFITH:  Yes, your Honor.  Even if they did not

21   give a specific flushing-out reason for why, to have at least

22   addressed the different claims that plaintiff included in his

23   complaint and the time limits for each of those complaints such

24   as inadequate medical attention or violation of self-rights or

25   privacy to his DNA, genetic material.

1          THE COURT:  Would your argument hold or be the same

2    for the failure to state a claim because that is as boilerplate

3    as it gets, but yet I have seen it in pretty much every

4    complaint I have ever seen as an affirmative defense.  Let me

5    try to make it a more coherent question to you.

6          Is it your view that the defendants were required in

7    their first affirmative defense, which is failure to state a

8    claim, to specifically explain every way in which they believe

9    the complaint fails to state a claim?

10         MS. GRIFFITH:  I think that that would certainly be

11   helpful to the plaintiff who is alleging the complaint.

12         However, I understand that the defense, having only a

13   21-day-time period, might not have the time to fully flush out

14   that argument.  I think the appropriate action the defendants

15   could have taken would be to either raise some of the issues in

16   the affirmative defense to provide some more information for

17   the plaintiff or to ask the court for an extension of time to

18   more fully flush out the argument.

19         THE COURT:  Okay, I guess my concern would be that

20   asking for an extension of time is not going to get them

21   discovery in the case.  They're not going to get discovery

22   until they've actually filed the answer.

23         I suppose the fall-back position would be asking for

24   leave to amend.  At some point if they're amending at the close

25   of discovery, I am not sure I'd be granting it.  I understand

1    the argument.  Hold on one moment, please, I want to make sure

2    I am asking all of my questions.

3              MS. GRIFFITH:  Sure.

4              (Pause)

5              THE COURT:  All right.  Ms. Griffith, what is your

6    view on fairness and what role that plays or does not play in

7    the affirmative defense context and with what granularity a

8    defendant should be given fair notice of affirmative defenses?

9              MS. GRIFFITH:  I think the starting point for the fair

10   notice argument would be that for fairness purposes, a

11   plaintiff and not just the defendant should be receiving fair

12   notice so that they're understanding the factual context of the

13   basis of the defense.  Similar to why there is the standard,

14   the specificity of the pleadings should be in a complaint, it

15   should similarly apply to claims in affirmative defenses.

16             THE COURT:  Let me ask you, I don't actually have any

17   more specific questions, but if there is anything in your brief

18   you want to sort of make sure I hear and understand at this

19   time, I would be happy for you to call it to my attention.  I

20   have your brief here.

21             MS. GRIFFITH:  I think I would really just emphasize,

22   your Honor, the importance of making sure that both parties are

23   being treated the same and that the policy considerations of

24   fairness guide your decision.

25             I also would stress, I know when you were speaking to

1    defense counsel, you were talking about the time difference

2    between the parties, how the plaintiff has more time to file a

3    complaint than the defendants have to file an answer with

4    affirmative defenses, and I would just want to raise to your

5    attention Rule 15 instructs the court to freely give leave to

6    defendants after additional facts become available to amend the

7    answer, so I did not think you should base your decision on the

8    fact that there are only 21 days to file affirmative defenses,

9    since if needed and more facts become available, they will have

10   more time just as plaintiffs had more time to file their

11   complaint.

12            THE COURT:  Thank you very much.

13            Ms. DeCastro, is there anything else you want to call

14   to my attention?

15            MS. DeCASTRO:  Yes, your Honor.

16            On the fair notice point, I would like to stress again

17   that even boilerplate affirmative defenses have been found to

18   give fair notice because it locks down what the defendants are

19   intending to use at trial, and I understand that this is a pro

20   se case, so possibly pro se plaintiffs do not know the law and

21   it may be harder for them using the boilerplate affirmative

22   defenses.

23            However, I do want to stress the point that many

24   courts have found that boilerplate affirmative defenses do

25   provide fair notice and affirmative defenses that are pled in

1    general terms provide plaintiffs notice with what defendants

2    intend to use at trial.

3         THE COURT:  Okay.  All right.  Thank you very much

4    both.  Let me then resolve this motion because that was the

5    first order of business on this call.  I want to thank you both

6    because I think that there are two schools of thought.

7         I think you have Judge Swain's opinion that everyone

8    points to on the idea they should be read to apply equally to

9    both settings, and then most recently there is Judge Wood's

10   opinion, and I am still struck by the fact that the Second

11   Circuit hasn't addressed the issue and no circuit court has

12   addressed the issue.

13        I can understand why it might not be on the Supreme

14   Court's docket, but it would be nice if I got some guidance

15   from my own circuit as to what to do.  I have looked at the

16   cases you you both have called to my attention.  I looked at

17   your briefs.  I think each of you has stated your position as

18   best you can, and so I am grateful for that because it makes my

19   job easier and harder at the same time, but at least I feel as

20   though I was informed when I went into it.

21        Ultimately I am going to deny the motion to strike,

22   and that is because I might not accept fully the argument there

23   are meaningful textural differences between Rule 8 (a) and 8

24   (c).  For me what is significant is that both of them require a

25   short and plain statement, and from that I am discerning, a

1   fair notice requirement from the Twombly decision.  I think

2   that what counts as fairness is different for plaintiffs who

3   are bringing claims and for defendants who are interposing

4   affirmative defenses to them.

5          I accept to a degree the notion that plaintiffs have

6   more time and that plaintiffs have invited and, in fact,

7   engendered the litigation.  Because of that, and while

8   recognizing there is Rule 15, but also recognizing there is

9   Rule 16, I believe that affirmative defenses that are sort of

10  typical in these cases can and often give plaintiffs fair

11  notice under some circumstances.

12         I will say this, though.  It is my view that what we

13  call a boilerplate defense provides fairness would depend on

14  the particular defense, so telling me statute of limitations, I

15  think that might be enough to put a plaintiff on notice that

16  there is at least some question about the timing of certain of

17  the claims, but if there is a defense of fraud or illegality, I

18  think I would want more detail.

19         So looking at the affirmative defenses in this case, I

20  believe that they give Mr. Jones fair notice because they

21  provide meaningful guidance to him and have an appropriate

22  level of detail given the time constraints and given the fact

23  that to me what what these are designed to do is to give the

24  plaintiff notice of the defenses and as well sort of set the

25  parameters for discovery.  So for this reason, I am going to be

1    denying the motion to strike.  Ms. Griffith, again you have the

2    thanks of the Court, as does your firm.

3           If you wanted to stay on this case for a longer

4    purpose, if you wanted to assist Mr. Jones with discovery, I

5    would certainly be interested in that.  If you feel that is

6    something you would need to discuss with Mr. Jones and with

7    your colleagues at your firm, or if you have other things

8    keeping you busy, I understand that as well.

9           MS. GRIFFITH:  Yes, your Honor.

10          Unfortunately, I don't think I have the time available

11   or my law firm's resources available at the moment.  I

12   appreciate the opportunity to participate for the purpose this

13   limited purpose.

14          THE COURT:  I will keep you in mind for another

15   limited purpose.  I will go back to the other issues on the

16   docket for the remainder of the litigation.  Ms. Griffith, if

17   you want to get off the call, that is fine.

18          MS. GRIFFITH:  Thank your Honor.

19          THE COURT:  Thank you again.  I am sorry for the late

20   notice to you, but you will know for next time, I actually do

21   want oral argument.

22          MS. GRIFFITH:  Yes, your Honor.  Thank you.

23          (Ms. Griffith has been excused from the call)

24          THE COURT:  Mr. Jones, are you still there, sir?

25          MR. JONES:  Yes, I am, Judge.

1          THE COURT:  Mr. Jones, it seems to me that the next

2     stage is discovery in the case, and I don't know that we have

3     had occasion to talk about discovery, but I have seen a

4     proposed case management plan from your adversaries.

5          Have you seen that document, sir, the case management

6     plan form?

7          MR. JONES:  Yes, I have, your Honor.

8          THE COURT:  Do you agree with the dates that are

9     contained in it, sir?

10         MR. JONES:  Yes, I think they're accurate, yes.

11         THE COURT:  Is there something you wanted to add to

12    them, sir?

13         MR. JONES:  Well, the defendants hadn't, as requested,

14    filed or made available to the plaintiff the medical records

15    and/or the criminal records for which they sought under

16    criminal law.

17         THE COURT:  Let me back up a moment.  Have you signed

18    the releases for those items?

19         MR. JONES:  Yes, those releases were signed and

20    delivered to the defendants some time ago.

21         THE COURT:  I will tell you my own experience, and I

22    am a Federal Judge, sometimes those records can be difficult in

23    obtaining.  Let me talk to Ms. DeCastro on this issue.  Did you

24    receive the releases, Ms. DeCastro?

25         MS. DeCASTRO:  Yes, your Honor.  I have one point on

1    the releases.  The medical release we received back from

2    plaintiff is for the wrong dates.  It seems plaintiff was

3    arrested on January the 27th of 2012, and the release he

4    returned for Bellevue Hospital was dated February 23, 2012 --

5    sorry -- April 23rd of 2012.  As part of my initial

6    disclosures, part of my document request and interrogatories, I

7    am going to send plaintiff a new release for the pertinent

8    dates in this matter.

9             THE COURT:  Mr. Jones, do you understand that, sir?

10            MR. JONES:  Yes, I do, your Honor.

11            THE COURT:  So you'll be on the lookout for that

12   document.  I know you will sign it once you get it.  All right.

13   Let me understand this:  Mr. Jones, in any of our prior

14   discussions have I spoken to you about the process of

15   discovery?

16            MR. JONES:  No.  I received a notice of discovery.

17   No, that is not true, your Honor.

18            No, no, no, I don't think we have.

19            THE COURT:  Let me talk to you about it, please, sir.

20            The purpose of discovery is for each side to get a

21   sense of the factual bases for the claims and for the defenses

22   in this case.  What typically happens in cases just like this

23   one is that you will be asked to give the documents that you

24   you have that relate to the issues in this case.  For the

25   medical records, we have already talked about how Ms. DeCastro

1    can get her hands on them.  For records of your custodial

2    status, I think she can get those as well.

3         If, for example, sir, you have records in your cell

4    about things that have happened to you that are relevant to

5    this litigation, not some other complaint you may have, but

6    this litigation, you will be asked to make a copy of those and

7    to give them to Ms. DeCastro.  By the same token, sir, you are

8    permitted to ask her for information that would bear on your

9    claims.  Do you understand what I have said thus far, sir?

10        MR. JONES:  Yes, I do, Judge.

11        THE COURT:  Ms. DeCastro, let me ask you.  I won't

12   tell Mr. Jones what to do, but I am just wondering, what

13   documents would you have or could you get that would bear on

14   the particular claims that are at issue in this complaint?

15        MS. DeCASTRO:  Yes, your Honor.

16        Currently I just recently received the District

17   Attorney file.  We will be turning that over to plaintiff

18   hopefully as part of our initial disclosures.  It is a little

19   bit lengthy, but I do expect to get it and turn it over to

20   plaintiff soon.

21        We also have, I have a detective document produced by

22   my clients related to his arrest and the investigation that led

23   to plaintiff's prosecution and arrest.

24        THE COURT:  All right.  Do you have the ability to

25   obtain the records of his time in custody?

1          MS. DeCASTRO:  You mean his Department of Corrections

2    records?

3          THE COURT:  That is what I am saying, yes.  Excuse me.

4          MS. DeCASTRO:  I believe I do.

5          The only concern, sometimes the Department of

6    Corrections will give us a little bit of push-back if it is not

7    a Department of Correction case in getting plaintiff's

8    institutional folder, but I can at least try to get it, and if

9    I get push-back, I can ask plaintiff to provide consent for

10   that.

11         THE COURT:  Do you need his consent or will a court

12   order suffice?

13         MS. DeCASTRO:  A court order well definitely suffice.

14         THE COURT:  If you send me a court order for those

15   records, I will sign it because I am sure Mr. Jones would like

16   to have a copy of them as well.

17         MS. DeCASTRO:  Yes, your Honor.

18         THE COURT:  Are there other documents that you have or

19   that you contemplate obtaining from sort of parties involved in

20   this matter who are not Mr. Jones?

21         MS. DeCASTRO:  At this time?  Obviously, there are

22   always documents that can arise later.  I have seen notes about

23   videos.  I don't believe I have those videos yet.  I don't know

24   if those videos would be saved, but that is something I am

25   intending to get at some point.  Besides that, I do have a lot

1   of paper discovery in this case I have obtained from the

2   District Attorney's Office and from my clients.

3           THE COURT:  Mr. Jones, again, sir, I can't be your

4   lawyer, and you don't want me to be, but I do think that what

5   I've just been talking about with Ms. DeCastro would be very

6   close to if not entirely the universe of documents that you

7   should have and you should be looking at in connection with

8   your claims.

9           If you need to ask her for additional documents, you

10  can certainly do that.  It is my understanding by this call I

11  am asking her to produce the District Attorney's Office file,

12  the arrest and investigation documents that she mentioned

13  earlier, the Department of Corrections materials, with or

14  without my order, the videos and any medical records she

15  obtains as a result of the releases.  Thank you, sir.

16          All right, sir?

17          MR. JONES:  Yes, your Honor.

18          THE COURT:  Ms. DeCastro, is there anything that you

19  need from Mr. Jones that we can talk about in this call?

20          MS. DeCASTRO:  Yes, your Honor, there is just one more

21  thing I just thought about while we were talking.

22          The criminal court file I have not yet received.  That

23  is something we requested and will hopefully get, expect to get

24  soon.  Sometimes that takes a little bit of time, but besides

25  that we need the medical releases from plaintiff, we need the

1    global 16050, which is authorization to release all of

2    plaintiff's prior arrest records, and we need that release

3    because plaintiff has claimed damages for false arrest in this

4    matter, and any damages for emotional distress related to that

5    false arrest may be cut off by prior arrests.  In discovery, we

6    will be seeking that release.

7              THE COURT:  Is it fair to say, Ms. DeCastro, what

8    you're looking for from Mr. Jones in the first instance is his

9    signature on several releases?

10             MS. DeCASTRO:  Yes, your Honor.  There are some

11   interrogatories I will leave space for plaintiff to fill in,

12   but it is mostly releases.

13             THE COURT:  Mr. Jones, you should be on the lookout

14   for releases from Ms. DeCastro.  I will not tell you what to

15   do, sir, but I am going to tell you if you don't sign them, she

16   won't get the documents and then you won't get the documents.

17             If you want these documents, and I suspect you do,

18   please sign the releases and return them to her, okay, sir?

19             MR. JONES:  Yes, I understand, Judge.

20             THE COURT:  Sir, Ms. DeCastro mentioned the term,

21   "interrogatories."  Let me explain to you what those are.  They

22   are questions that litigants can pose to each other.  Sometimes

23   some people want to clarify dates or events or who might have

24   been present.

25             For example, Ms. DeCastro could ask you in an

1    interrogatory who was present at a certain event, who was

2    present on a certain day?

3           That is part of the discovery process.  You should not

4    be surprised to get them.  If you wish to send discovery

5    interrogatories of your own, you may do that.  You might want

6    to look at hers for format, but that is the idea of them.

7           Sometimes there are something called requests for

8    admissions, and what that is, she may ask you to admit that a

9    certain thing happened on a certain day or that a certain, you

10   know, that February 14th was on a Sunday this year or something

11   like that, just things of that nature.

12          Then, finally, there are depositions.  Ms. DeCastro,

13   is it your intention to take Mr. Jones' deposition?

14          MS. DeCASTRO:  Yes, your Honor.

15          THE COURT:  Are there other depositions that you

16   intend to take?

17          MS. DeCASTRO:  Your Honor, we believe there may have

18   been other people present when Mr. Jones was arrested on this

19   matter, so we may take their depositions once we can figure out

20   who was around.

21          THE COURT:  Mr. Jones, do you know what a deposition

22   is, sir?

23          MR. JONES:  Yes, I do, Judge.

24          THE COURT:  Have you ever been at a deposition?

25          MR. JONES:  Yes, I have.

1          THE COURT:  There may be depositions sought by Ms.

2   DeCastro.  You have the ability to seek to depose people,

3   although that can sometimes be complicated when you're

4   incarcerated.  Sometimes folks have said that they don't need

5   depositions, sometimes folks have done depositions by written

6   questions, writing a list of questions to people which would be

7   somewhat similar to an interrogatory.  I want to make sure

8   you're aware of the various things that can happen in

9   discovery.

10         I will let you both know that I will sign the

11  discovery plan and case management plan you have sent my way.

12  It is my very strong preference not to extend those dates.  If

13  any of you, either of you, has any problem, you will let me

14  know right away and I will see what I can do to solve the

15  problem.  I will also just make sure -- look, I just don't want

16  to extend this.  Please tell me, I guess I am asking you to

17  start early with your discovery requests and with answering the

18  discovery requests.

19         I recognize, Ms. DeCastro, for some things you are

20  dependent on a third party, but you'll let me know if I need to

21  get involved, all right?  Let me look again at what I have.

22         What I will likely do is convene a conference at the

23  end of fact discovery, which is currently scheduled to close on

24  the 25th of June.  Ms. DeCastro, do you expect expert discovery

25  in this case?

1              MS. DeCASTRO:  No, your Honor.

2              THE COURT:  Mr. Jones, do you expect having expert

3     discovery in this case?

4              MR. JONES:  At this point in time, I can't say yes or

5     no, your Honor, only because there are a lot of things that

6     still haven't been totally developed.

7              THE COURT:  I understand.

8              MR. JONES:  I will reserve.

9              THE COURT:  I won't commit you.

10             I was trying to get a sense.  We'll keep the expert

11    discovery deadlines in place.  I will talk to you both after

12    the close of fact discovery to make sure that fact discovery

13    has concluded and to talk with you both about how you would you

14    like this litigation to proceed.

15             Obviously, and this is the voice of eternal optimism

16    here, if at any point both of you are interested in trying to

17    settle the case, you will let me know if it would be useful to

18    have the case referred to the magistrate judge in this matter

19    or referred to a mediator or something different than that.

20    Just know that we are available for that purpose as well.

21             From my perspective, what I will do is I will endorse

22    the case management plan and send it to both of you and I will

23    put in a date for another conference.  Ms. DeCastro, you can

24    understand, please, and you will let me know if you need an

25    order to this effect, for that particular proceeding we will

1    have a telephonic conference as we are today.

2              MS. DeCASTRO:  Yes, your Honor.

3              THE COURT:  Mr. Jones, is there anything else we

4    should be discussing today, sir?

5              MR. JONES:  Yes, your Honor.

6              Being that I am in the place that I am, unfortunately,

7    I don't have an extra copy of my 1983, the original complaint

8    that was filed, and it is my request from the People, the

9    defendants that I receive a copy from the Courts.

10             THE COURT:  Ms. DeCastro, can you include a copy of

11   his complaint with your releases?

12             MS. DeCASTRO:  Yes, your Honor.

13             THE COURT:  That is fine.

14             Anything else, Mr. Jones?

15             MR. JONES:  The issue of appointment of counsel, will

16   I be able to peruse that option in the future or is that cut

17   off from me until after the interrogatories and discovery?

18             THE COURT:  Let me answer that as best I can.  I am

19   able at times to solicit or ask for help from people to

20   represent people for limited purposes.  I also have the ability

21   to order people to do things if it aids me.  The appointment of

22   Winston & Strawn to assist you on your motion to strike was

23   designed principally to aid the court.

24             Let me ask, have you actually submitted a request for

25   pro bono counsel, sir?

1           MR. JONES:  No, I haven't, because of the fact all of

2     the things that have been bombarding me, I haven't had an

3     opportunity, but I sought to do so at the earliest possible

4     convenience.

5           THE COURT:  If and when you submit the form to me, I

6     will take that under advisement and talk to our Pro Se Office

7     what is best in that circumstance.

8           MR. JONES:  Thank you, Judge.

9           THE COURT:  Ms. DeCastro, is there anything else we

10    should be talking about today?

11          MS. DeCASTRO:  No, your Honor.

12          THE COURT:  Thank you very much for arranging this

13    call.

14          MS. DeCASTRO:  Thank you so much.

15          MR. JONES:  Thank you.

16          THE COURT:  Goodbye to both of you.

17          (Court adjourned)

18

19

20

21

22

23

24

25