G6t1jonc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROBERT JONES,

    Plaintiff,

   v.        14 Civ. 6402 (KPF)

JAMES MEEHAN, et al.,

    Defendants.    Telephone Conference

------------------------------x

            New York, N.Y.
            June 29, 2016
            2:32 p.m.

Before:

     HON. KATHERINE POLK FAILLA,

            District Judge

       APPEARANCES
      (Via Telephone)

ROBERT JONES
   Pro Se Plaintiff

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
   For Defendants
BY:  MARIA FERNANDA DECASTRO, ESQ., ACC

G6t1jonc

1          (In chambers)

2          THE COURT:  All right.  Good afternoon.  This is Judge

3   Failla and I am calling the case of Jones v. Bloomberg, et al.

4   Mr. Jones, are you on the line, sir?

5          MR. JONES:  Yes, I am, Judge.

6          THE COURT:  Good afternoon to you, sir.

7          MR. JONES:  Good afternoon, your Honor.

8          THE COURT:  And Ms. Decastro, are you on the line as

9   well?

10          MS. DECASTRO:  Yes, I am, your Honor.

11          THE COURT:  Okay.  And is there anyone else on the

12   line of which the parties are aware?

13          MR. JONES:  No, no, I'm not aware.

14          MS. DECASTRO:  No one on defendant's side.

15          THE COURT:  Okay.  Thank you for letting me know that

16   as well.

17          We have in theory a call scheduled or a conference

18   scheduled for tomorrow, the 30th of June, but in light of

19   letters that I've received from the parties, I decided to

20   advance it one day and so there will be no call tomorrow.

21   We'll deal with some of these issues today.

22          Mr. Jones, I'm wondering, sir, if you can help me with

23   something.  I received a document from you and it was docketed

24   by our pro se office last week.  But it's dated May 30th, and

25   it seems to contain references to a notice of demand.  And so

G6t1jonc

1    I'd like to understand, sir, what it is you're demanding and

2    what it is you believe you have not been given in this

3    litigation.

4         MR. JONES:  The notice of demand for remedy is based

5    on the United States Second Circuit ruling for February 1,

6    2016, where a three-judge panel had voted that the police must

7    have a search warrant before they can enter the suspect -- or

8    enter the home of someone that they believe to be a suspect,

9    and in this case that wasn't done.  There was no search warrant

10   after being arrested and detained, there was never any arrest

11   warrant issued for the arrest, and it violated the Fourth

12   Amendment.  And I pointed towards those cases in that demand

13   for remedy hoping that the People would see -- hoping that the

14   People would see what was being said because of the fact that I

15   was detained for 22 months after the arrest, the case was

16   resolved in favor, and the disposition that returned to me --

17   the case was closed, and as a result, it created the matter of

18   Jones v. Bloomberg.

19        THE COURT:  All right.  Sir, let me talk to you a

20   little bit about that.  I think you're talking about the *Allen*

21   decision from earlier this year.  That was a criminal case, and

22   did it not arise in the context of a suppression motion?

23        MR. JONES:  It was, yes, it was in a criminal case,

24   and what had happened is that Allen was arrested in a home, and

25   after or during the course of being questioned for a crime that

G6t1jonc

1    he was alleged to have committed, he was arrested in his house,

2    and as a result from that, the case was prosecuted.  The

3    individual, Allen, was able to appeal, and his case went before

4    the circuit court, and they ruled that there was a Fourth

5    Amendment violation.  He also cited *Payton v. New York* and

6    *United States v. Reed* in his argument, and it was posted in the

7    New York Law Journal prior to February 1st.

8          THE COURT:  Okay.  Sir, let me explain to you where I

9    think you and Ms. Decastro are on two ships passing in the

10   night.  What you're talking about, sir, are the legal bases for

11   your claim of a Fourth Amendment violation.  You have brought

12   this case because you believe that your Fourth Amendment rights

13   were violated, and you are citing to us this *Allen* decision as

14   further support for the legal basis for your claim.  Is that

15   correct, sir?

16         MR. JONES:  That's correct, your Honor.

17         THE COURT:  Okay.  And I think separately your

18   reasoning from this *Allen* case is that perhaps one of the

19   things you should be receiving in discovery would be the search

20   warrant or arrest warrant in this case if there happens to be

21   any.  Is that also correct, sir?

22         MR. JONES:  Yes, that's also correct.

23         THE COURT:  Okay.  I understand that.  The problem is,

24   the way this particular submission came in, it suggested that

25   you weren't going to do anything, you weren't going to

G6t1jonc

1    reciprocate and provide any discovery to the other side until

2    certain things happened.  So what I want to do in this call is

3    to understand what discovery has been produced, what discovery

4    hasn't been produced, and how to make sure that both parties

5    are producing what they're supposed to.

6              Sir, let me talk for a moment to Ms. Decastro.

7              Ms. Decastro, you'll excuse me if I don't know the

8    details of the underlying case in this regard.  Was there a

9    search warrant or an arrest warrant ever prepared as to

10   Mr. Jones?

11             MS. DECASTRO:  Yes, your Honor.  My understanding is

12   that there was no arrest warrant but there was a search

13   warrant, and Mr. Jones was -- we provided a copy of that search

14   warrant affidavit to Mr. Jones in our disclosures in this

15   matter.

16             THE COURT:  So is it the case that the execution of

17   the search warrant, it is argued -- I won't make a finding one

18   way or the other -- gave the officers probable cause to

19   thereafter arrest Mr. Jones at that place?

20             MS. DECASTRO:  No, your Honor.  So my understanding of

21   the situation is Mr. Jones was a parolee at the time.  He was

22   living at a halfway house.  He was arrested at that location,

23   and then afterwards there was a search warrant that was

24   executed at that location to recover numerous stolen items.

25   But at the time that he was arrested there had already been --

G6t1jonc

1   there was video of Mr. Jones committing -- in and around the

2   location where these burglaries had been committed and other

3   evidence that supported that he was the one who had committed

4   these burglaries.

5            THE COURT:  I see.  So was there an arrest warrant for

6   him or was he arrested as a result of probable cause found some

7   other way?

8            MS. DECASTRO:  Yes, exactly.  Not an arrest warrant

9   but just arrested on probable cause grounds.

10           THE COURT:  And thereafter, there was a search warrant

11  that was applied for and received?

12           MS. DECASTRO:  Yes, the next day.

13           THE COURT:  I understand that.  Okay.

14           So Mr. Jones, obviously, sir, all cases are different

15  and I'm not going to be making any final decisions on the legal

16  issues in this telephone call, but it sounds like there is a

17  search warrant that was sought and Ms. Decastro has it and

18  either has produced it or will produce it to you, and on the

19  issue of the arrest warrant, your arrest seems to have taken

20  place in circumstances different from those described in the

21  *Allen* decision, so I won't make a final determination in this

22  call, but it may be that there was no need for a written arrest

23  warrant prior to your arrest.  It may be that officers had

24  probable cause to arrest you and thereafter to prepare the

25  paperwork.  My concern, Mr. Jones, is, I want to make sure that

G6t1jonc

1    you're not holding back on any discovery in the case or you're

2    not refusing to produce discovery in the case, because I'll

3    make sure in this call that everybody knows what he or she has

4    to produce and that they thereafter produce it.  All right,

5    Mr. Jones?

6             MR. JONES:  Yes.  Well, your Honor, if I may, firstly,

7    I'd like to address our previous telephone conference.

8             THE COURT:  Yes, sir.

9             MR. JONES:  Yes.  Our previous telephone conference.

10   I was under the impression that the People were supposed to

11   turn over a copy of my 1983 and that this Court was supposed to

12   provide me with a transcript of those -- of the previous

13   proceedings, which I never received.

14             Secondly, looking here through my paperwork, I do see

15   the search warrant -- I mean, the -- yeah, the search warrant,

16   and the search warrant is dated on the 26th of January.  I

17   was arrested the 27th at 3:00 in the morning.  The search

18   warrant wasn't actually due to be enforced until 9 -- 6 in the

19   morning -- from 6 to 9 in the morning.  So I'm wondering how

20   the police were able to come to my house, come to my bedroom,

21   forcibly remove me from my house, handcuff me, put me in a

22   police car, take me to another -- to another borough and then

23   hold me in detention for 16 hours while putting me through

24   numerous lineups, while denying me a right to an attorney and

25   not giving me my *Miranda* until after they had established that

G6t1jonc

1    there was something found in the house that may have been the

2    fruits of a crime.  So -- and it says here, according to the

3    search warrant that was issued by Judge Armstrong, that the

4    district attorney, Lorraine Perry, wrote that the respondent is

5    further informed by information that the occurrence -- excuse

6    me.  Okay.  That the respondent believes that the property in

7    the above location has -- went to the target premises on

8    January 25th, observed defendant sitting on a lower bunk

9    inside of the home, using what could not be actually

10   substantiated as the item that was stolen.  The issue that the

11   police were in the house, on the premises without the search

12   warrant, did this observation, and then took from that

13   observation in order to develop their case, show that this may

14   have been prior to the search warrant being issued, because

15   this is the premises on the 25th and Detective -- what is his

16   name?  I have it here.  Detective in this case, Meehan, James

17   Meehan, is reported to have used this tracking device to locate

18   a GPS signal and then entered the home based upon that and did

19   all of this police work without my knowledge and then issued --

20   and then came and arrested me in my home without an arrest

21   warrant in order to execute and to fulfill the search warrant,

22   because while I was at the precinct, then they executed and

23   they enforced the search warrant.  So that was -- and this is

24   primarily my position.

25           As for the interrogatories, on May 31st, I did

G6t1jonc

1      effectively serve on the defendants a copy of their first

2      interrogatories, along with various exhibits.  Most recently I

3      received a copy from the mail, from U.S. Postal Service saying

4      that the document in question, which was the interrogatory, was

5      actually mailed and it was found, and this is what it says on

6      the certified mail, return receipt, found in supposedly empty

7      equipment at Rye, New York, and I don't know how the document

8      went in that direction when they were certified, and they were

9      supposed to go to Zachary Carter for the corporation counsel.

10     So, you know, that raised some eyebrows.  So what I did, I put

11     a second copy in the mail and I sent it to your chambers and I

12     am also providing defendants with another copy of the

13     interrogatories and my answers to those interrogatories, along

14     with cover letter and the exhibits that are contained therein.

15             THE COURT:  Okay.  Let me stop you for a moment,

16     Mr. Jones.

17             First of all, I appreciate the clarification that you

18     gave me about why the evidence or the discovery that you have

19     received thus far has caused you to ask some questions rather

20     than have questions answered.  Again, on the issue of the legal

21     theories involved in this case, at some point I will be making

22     determinations on the law.  For now I'm trying to ensure that

23     the parties have the documents that they need.  So what I'll do

24     is, based on what you've just now said to me, let me talk to

25     Ms. Decastro and ask her to help me understand the sequence of

G6t1jonc

1    events that begins with a visit on the 25th, a search warrant

2    on the 26th of January, and an arrest on the 27th of January.

3                MR. JONES:  Yes, okay.

4                THE COURT:  Okay.  So Ms. Decastro, may I hear from

5    you.

6                MS. DECASTRO:  Yes, your Honor.  If I could just have

7    one second.  My Adobe where I downloaded all the documents is a

8    little -- I'm sorry.

9                THE COURT:  No, of course.  That's fine.

10               While you're getting them, Mr. Jones, I'll tell you,

11   we sent to you a copy of your 1983 complaint.  Did you receive

12   a copy of it?

13               MR. JONES:  I did not receive that, Judge.

14               THE COURT:  We will --

15               MR. JONES:  I did not receive it at any time.

16               THE COURT:  All right.  We sent you, I think, a letter

17   with a pamphlet on discovery.  Did you not receive that?

18               MR. JONES:  That I did receive.

19               THE COURT:  My understanding was that the complaint

20   was in that envelope.  Was it not there, sir?

21               MR. JONES:  No, it wasn't, your Honor, no.

22               THE COURT:  All right.  We will resend it.

23               Secondly, Ms. Decastro, did you send the transcript of

24   our last conference to Mr. Jones?

25               MS. DECASTRO:  The transcript -- the conference

G6t1jonc

1    regarding the affirmative defenses?  I did.

2           THE COURT:  Okay.

3           MS. DECASTRO:  Let me just verify.

4           THE COURT:  What we'll do at this end is, as we're

5    sending another copy of the complaint, we'll send whatever

6    transcript we have access to.  Anything that's on the docket,

7    we'll print out and send with the complaint to Mr. Jones.

8    Ms. Decastro, we will not have an enclosure letter, but you'll

9    just know that that's what we've sent on to him.

10          MS. DECASTRO:  Sure.

11          THE COURT:  Okay.  Thank you.

12          And Mr. Jones, do you understand what I've just said?

13          MR. JONES:  Yes, ma'am, I do.

14          THE COURT:  Okay.  Fine.  All right.  And

15    Ms. Decastro, whenever your Adobe is working, we'll hear from

16    you.

17          MS. DECASTRO:  Yes.  Thank you.  Sorry.  One second.

18          I'm sorry, your Honor.  This is giving me a little bit

19    of trouble, but from my timeline, not from the documents, the

20    officers did encounter Robert Jones in his apartment on the

21    25th and then the search warrant was received on the 26th.

22          THE COURT:  Bow how did they come to encounter him?

23    Did they do a knock and talk?  Did they try and speak with him

24    in his apartment?  Did they try to obtain consent to search the

25    apartment?  Was there something else that was done?

G6t1jonc

1          MS. DECASTRO:  Yes, your Honor.  So this is from my

2     notes from the representation interviews.  The place that he

3     was living at at the time was a halfway house, after he was on

4     parole, and the officers went there, and they were given

5     consent from the person who runs the place to go up to see

6     Mr. Jones in his -- it's a shared room with a bunch of people

7     in it.  The way that they got there was through GPS tracking of

8     one of the computers that was stolen.

9          THE COURT:  I see.  So there was not some GPS tracking

10    device that was slapped onto Mr. Jones or a part of his

11    residence at the halfway house.  They were actually able to

12    locate the computer that had been stolen by its tracking

13    device.

14          MS. DECASTRO:  Right.  To that general area.  And

15    also, there had been wanted posters for Mr. Jones around the

16    various precincts saying, we're looking for this person for

17    this pattern of burglaries, and my understanding is that he had

18    also been spotted in the area by two police patrol, police

19    officers.

20          THE COURT:  Okay.  But to clarify what Mr. Jones was

21    saying to me earlier, you're saying that there was in fact no

22    search warrant for the encounter with Mr. Jones on the 25th,

23    correct?

24          MS. DECASTRO:  Correct, your Honor.  Yes.

25          THE COURT:  Okay.  And there was thereafter an arrest

G6t1jonc

1    on the 25th.

2              MS. DECASTRO:  The 25th, I believe so, yes.  I don't

3    have the -- I'm sorry.  My Adobe is not working so I can't pull

4    up the actual arrest paperwork, but --

5              THE COURT:  Okay.

6              MS. DECASTRO:  And his house was not -- or the place

7    that he was living was not searched until after the warrant was

8    executed, after the warrant was signed.

9              THE COURT:  After the search warrant was signed.

10             MS. DECASTRO:  Yes.

11             THE COURT:  But what you're saying is that there was

12   at least some observation of the place in which he was residing

13   because of their prior visit to the halfway house and the

14   consent, valid or not -- I will not say -- to go and visit him

15   in the shared dormitory area.

16             MS. DECASTRO:  Yes, your Honor.

17             THE COURT:  I understand that.  All right.

18   Ms. Decastro, Mr. Jones just told me that he tried to send you

19   responses to the interrogatories, had less success, and then

20   resent them.  Do you now have a copy of his answers?

21             MS. DECASTRO:  I do not.  The only thing I've gotten

22   from Mr. Jones is the releases themselves but no answers to the

23   interrogatories.

24             THE COURT:  Okay.  And what have you, Ms. Decastro,

25   sent to Mr. Jones in response to any document production

G6t1jonc

1    requests or any of our prior discussions on discovery?

2               MS. DECASTRO:  On discovery, I've sent Mr. Jones the

3    DA files, which contain the arrest paperwork and other

4    DA-related paperwork.  With regard to the releases, I actually

5    have not received any records back from those releases.  They

6    were recently executed and recently sent out, so I don't have

7    anything.  But as soon as I get that back, I will actually send

8    it to Mr. Jones.

9               THE COURT:  Okay.  And anything else sent to him?

10              MS. DECASTRO:  That's all.

11              THE COURT:  Okay.  And is it your position that there

12   are no further relevant documents to send to him?

13              MS. DECASTRO:  Well, the rap sheet that we would

14   receive from the Criminal Justice Administration would be

15   relevant and the medical records which are from Bellevue

16   Hospital would be relevant, but besides that, I can't think of

17   anything else that we would use to support our defenses.

18              THE COURT:  I understand.  Let's talk about supporting

19   his claims and not merely your defenses.

20              MS. DECASTRO:  Right.

21              THE COURT:  Are there additional documents that you

22   have that would speak to the issue of his encounters with law

23   enforcement that are not contained in the DA file?

24              MS. DECASTRO:  I can cross-check the NYPD documents

25   that I have and make sure that he has everything.

G6t1jonc

```
 1            THE COURT:  All right.  Would memo book entries from
 2    the police officers be produced in the DA's file?
 3            MS. DECASTRO:  I believe that they would be.  Again,
 4    it's not my -- my Adobe is not working right now, but I will
 5    make sure that he has the memo books for the named officers.
 6            THE COURT:  Mr. Jones, do you understand what I've
 7    just been discussing with Ms. Decastro?
 8            MR. JONES:  Yes, I have, Judge.
 9            THE COURT:  So I've been trying to ensure that
10    anything that she has that documents or evidences or talks
11    about the encounters that you had with the police department in
12    late January are produced to you and you've heard her say, and
13    I've heard her say as well, that there are some more materials
14    that will be coming to you that would include perhaps the rap
15    sheet, but they are also likely to include any documents that
16    she received in response to the authorizations that she has
17    filed with various providers of medical services.  So you can
18    expect to get some more things from her.  Do you understand
19    that, sir?
20            MR. JONES:  Yes.  Yes, I do, Judge.
21            THE COURT:  All right.  Mr. Jones, is there anything
22    else that you think you should be getting that you have not
23    received from the defense?
24            MR. JONES:  The -- no, that is fine, Judge, because
25    it's ironic that I just received the letter basing that we were
```

G6t1jonc

going to have this conference just today and I had just gone to

the mailroom in the institution to pick it up and it was

verifying that this conference was scheduled for today, so I

really didn't have a lot of time to prepare.  I just happened

to have had a few things with me that I was going to take with

me to the law library to do some research and that's why I was

able to bring forth those issues.

THE COURT:  All right.  Well, Mr. Jones, let me then

speak to you on this issue.  I mean, the reason for this call

is because your adversary, the defendants in this case,

believed that you really weren't doing enough in terms of

producing discovery yourself, so I feel comfortable that I've

discussed with Ms. Decastro what should be produced to you and

the timetable for that production.  I understand that you have

now said to me that you had concerns about your complaint and

not receiving it and transcripts and not receiving those, and

we will send them to you.  We'll gather them later today and

send them and hope that they get to you soon.  I guess the

issue is, could you please resend to Ms. Decastro the answers

to their interrogatories, because I know you've sent it twice,

but for reasons known best to the Postal Service and your

prison facility, she doesn't have them, and I believe that she

doesn't have them.  So can you resend them?

MR. JONES:  Yes, yes, I certainly will, your Honor.

THE COURT:  Okay.  And Mr. Jones, do you have

G6t1jonc

documents in your possession that you intend to use to prove

your claims?

        MR. JONES:  Yes, I have various documents, medical

records, disclaimers, I got the properties that was missing

that was from my personal property, medical records,

educational records, photos, my mother's eulogy was within

those documents, in that property, and once it was confiscated

by the police, I never retrieved those.  Those documents --

documents were never recovered.  Although I sought to recover

them from the district attorney's office, there were a lot of

things that were missing, and I was informed that I would have

to seek some sort of claim form in order to recover these

things, and these documents, medical records, were medical

records that were made back in the 1980s -- 1996 up until the

present that I -- because I had a medical condition and I was

under mental healthcare at the time, and the whole thing was

traumatic for me, and after 20 -- 22 months of detention, the

case was virtually administratively abandoned or it was not

prosecuted and it resulted in a 3030 being filed by my

attorney, which was granted by the judge, resulting in this

action that's before the Court.

        THE COURT:  All right.  So Mr. Jones, right now in

your possession do you have documents that you intend to use to

prove your claims at a trial in this case?

        MR. JONES:  Other than -- no, actually, the documents

G6t1jonc

1    that I have are medical.  I was relying on the defendants to

2    provide certain documents that they can access, such as sealed

3    records documents and various other police procedures that were

4    not enforced, which I was relying on in order to try to

5    substantiate my claims, the Fourth Amendment violation, various

6    other things.  My 1983 would help me assess exactly what I

7    asked for -- what I could ask for, so that would be a major aid

8    to my trying to sort out any miscommunication that we may have

9    incurred over the last six months or so.

10            THE COURT:  All right.  But Mr. Jones, let me ask you

11   this:  I last spoke with the parties in or about February or

12   March about these issues.  What have you done to request

13   materials from the defendants during this period of time?

14            MR. JONES:  Well, I've made numerous requests I filed

15   with the People, with the defendant, a demand for remedy, as

16   I've spoken about --

17            THE COURT:  Sir, no.  Let me stop you there right now.

18   The demand for remedy, I don't know what that is, sir, and I

19   actually looked this up to see if I could find something.  What

20   is it that you seek in this demand for remedy?  And more

21   specifically, what documents or evidence do you seek with this

22   demand for remedy?

23            MR. JONES:  Well, in light of the ruling from the

24   circuit court, I was basing my -- the demand for remedy with

25   other such documents on the fact that if the higher court has

G6t1jonc

made a ruling and that this ruling affected my case, that I

would be entitled to some verification that there may be some

relief in my case.  I alleged in those documents that according

to *United States v. Reed*, that when they came to the home, they

did not open the door, as far as the knock.  Also that a

third-party resident, that a warrant should also reflect the

name and/or person that are occupying the dwelling in order for

it to be respectively enforced.  And I want those issues

brought out and hoping that the People would see that yes,

there was -- there may be an issue that gets resolved between

the parties without the Court having to mediate these things,

but I got no -- this has gone to -- I noticed a default under

Federal Rules of Civil Procedure 55(a) stating that because

certain documents weren't provided to me in an adequate time in

order to -- in order to establish my defense, that the People

were under default.

THE COURT:  All right.  Mr. Jones, I need to stop you

again, and I want you to listen very carefully to all I'm about

to say to you, sir.

First of all, I have to tell you that your submission,

this notice of demand for remedy, is extremely difficult to

understand, and it is only through talking with you in this

conference that I am able to understand it, and I've had law

school and I've had legal training for a long period of time,

so I think you're asking an awful lot to expect anyone to read

G6t1jonc

1    this and understand what you are saying.  To the extent that

2    this demand for remedy is a way of explaining further to the

3    defendants in this case why you believe that your rights have

4    been violated, that's fine.  They now understand that.  But

5    we're at the period right now where we're trying to get

6    documents produced.  I don't think it is fair for you to have

7    expected that by serving this demand for remedy on them that

8    they would have simply rolled over, given you money, and gone

9    no further in this case.  You needed to explain to them what

10   documents you wanted and what you wanted as a result of this

11   and you did not do that very clearly, sir.  The demand for

12   remedy, I am accepting it and I am construing it as additional

13   clarification of the bases for the allegations made in your

14   complaint.  This is the legal bases on which you are making

15   claims based on the factual allegations that you have asserted.

16   But again, sir, nowhere in there do I see a document request or

17   interrogatory request in this document, and I certainly don't

18   see you producing anything to them.

19          With respect to your default, your notice of default,

20   I reject that entirely, sir.  I sent you the complaint in this

21   case.  Your adversary sent you the transcript in this case.  It

22   is very unfortunate that the mail at your prison facility has

23   not permitted you to get these documents, but I'm not going to

24   find default.  First of all, I'm not going to find default for

25   the defendants based on the conduct of me, and second of all,

G6t1jonc

1    I'm not going to find default where both myself and the

2    defendants attempted to send you the very things that you are

3    complaining about.

4           So where we are now, sir, is, if there are materials

5    with you in your cell that go to these claims, you have to

6    produce copies of them to the defense.  If you don't, that is

7    your call, but it means you're not going to be able to use

8    those documents at any trial in this case.  Do you understand

9    what I'm saying, sir?

10          MR. JONES:  Yes, I do, your Honor.

11          THE COURT:  All right.  Secondly, you should have

12   actually engaged in discovery rather than engaging in the

13   letters and submissions that you did make, but we'll try and

14   remedy that now.

15          My chambers, in the next day, the next 24 hours, will

16   send the 1983 complaint and the transcript.  You have heard me

17   in this conversation talk with Ms. Decastro about the materials

18   that she has sent.  If there are other things that you're

19   seeking, you have to let them know right away what they are,

20   but it seems to me that they've produced everything that bears

21   on the allegations in your complaint.

22          I don't know about the issue of sealed records, and

23   I'm going to turn to Ms. Decastro on that right now.

24          Ms. Decastro, do you know what Mr. Jones is speaking

25   about when he is speaking about sealed records that you might

G6t1jonc

1   have access to that he does not?

2           MS. DECASTRO:  I'm not sure, your Honor.  The only

3   thing that I could think that would be sealed would be the

4   grand jury minutes, which we do not have access to.  We would

5   have to get those unsealed in state court, which is not

6   typically something that we do.  And I really can't think of

7   anything else.  He has the search warrant affidavit.  I don't

8   know what else could be sealed in this matter.  The name of the

9   complainant in the burglary has been redacted, so I don't know

10  if that's what plaintiff is referring to.

11          THE COURT:  Well, I'll ask.

12          Mr. Jones, what sealed materials do you need that you

13  don't have?

14          MR. JONES:  Well, they pertain to police misconduct in

15  the past, whether the arresting officers had engaged in such

16  behavior such as falsifying evidence or making illegal arrests

17  and that sort of thing.  These documents, I believe I had to go

18  through the defendants' counsel in order to get to them because

19  they substantiate or they show consistency in the allegations

20  that are made against them that some officers from the NYPD

21  have a propensity of engaging in these acts while violating

22  people's rights to be secure in their home without unreasonable

23  intrusion.

24          THE COURT:  All right.  Let me stop you for a moment.

25          Ms. Decastro, with respect to the officers who are

G6t1jonc

1    named as defendants in this case, are there substantiated CCRB

2    complaints regarding any of these officers?

3              MS. DECASTRO:  Yes, your Honor.  Let me check.

4              THE COURT:  Because I think that's what Mr. Jones is

5    asking for.  If there were, for example, civil lawsuits against

6    them in which they were found to be liable for the conduct

7    similar to the conduct alleged by Mr. Jones, if there are

8    substantiated CCRB complaints regarding these individuals that

9    pertain to or that are similar to the conduct alleged by

10   Mr. Jones or that speak to the issue of their veracity --

11   Mr. Jones, that's what you're thinking about, correct, sir?

12             MR. JONES:  Yes, your Honor, that is.  And also, in

13   order to -- to aid me in the process of documents, which, you

14   know, I don't have a lot of materials here and the law library

15   that we have is really not very equipped, and they don't give

16   us access to various things, I'm under the impression that

17   the -- that this Court provides defendants with a pro se book

18   or booklet, the yellow book -- I don't know how to describe

19   it -- that lays out motions and things that will be necessary

20   or that could help a pro se litigant in the prosecution of the

21   case.

22             THE COURT:  I'll speak to that as Ms. Decastro is

23   getting her notes together.  There was a pro se manual that was

24   discontinued, so I believe it to be out of date.  There are

25   individual pamphlets, one on discovery and there's one that is

G6t1jonc

1    coming out on motions, and so I can send you the discovery one

2    again.  We have sent it to you previously, sir.  And the

3    motions pamphlet is almost ready to be released, and I will

4    speak with the person who is preparing it, and if it is ready

5    to be released, I will include that as well.

6              MR. JONES:  Okay.  Thank you, your Honor.

7              THE COURT:  All right.  Ms. Decastro, any insight to

8    the last question I left with you?

9              MS. DECASTRO:  Yes, your Honor.  So this is with the

10   caveat that when I got the CCRB report, it was February 24th

11   of 2016.  I just want the Court to be aware of that.  I can

12   only see one instance that's similar that was substantiated for

13   one of the officers.

14             THE COURT:  I'm going to ask you to produce that

15   instance then.

16             MS. DECASTRO:  Would you like me to ask CCRB for new

17   reports just to confirm that there was nothing else?

18             THE COURT:  Yes, please.

19             MS. DECASTRO:  Okay.  And then if I get the reports

20   back and there is substantiated for a similar instance, I will

21   produce that instance to plaintiff.

22             THE COURT:  All right.  Thank you very much.

23             All right.  So Mr. Jones, we have a plan for the

24   production of the material you seek regarding the misconduct by

25   the officers who are named as defendants in your case.  We have

G6t1jonc

1    as well materials that I can give you that are prepared by our

2    pro se office, and I know the pro se manual has been

3    discontinued, but if I can find a copy of it and it appears not

4    to be outdated, then I will send you a copy of that as well.

5          Mr. Jones, what else do you need?

6          MR. JONES:  I think that -- I think, with -- I think

7    what I have would be -- or what I'm expecting to get will be

8    appropriate for me to go further and to, at length, bring about

9    some clarity as to my position as to the case at large.

10         THE COURT:  Okay.  And sir, you have materials that

11   you wish to produce to the defendants, is that not correct?

12         MR. JONES:  Yes.  Medical records that I have that I

13   accumulated from the institution that indicates what my medical

14   status was at the time of arrest.  I have those and I'll make

15   those available immediately and --

16         THE COURT:  And also the interrogatory responses, sir?

17         MR. JONES:  Yes, definitely the interrogatory

18   responses.  I have that.  I have that with me, and I'll be able

19   to give the defendants a copy of that.

20         THE COURT:  Okay.  And Ms. Decastro, what else is it

21   that you're expecting from Mr. Jones before there can be

22   depositions in this case?

23         MS. DECASTRO:  Well, once we get responses to the

24   interrogatories, we sent out the releases, like I said, that

25   were sent back by Mr. Jones, so we would like to have those

G6t1jonc

1   records before we take the deposition.  But obviously I know

2   that I don't want to prolong the case any further.  The

3   defendants are interested in settling, or coming to finality of

4   this matter.

5           THE COURT:  Whether that's for settlement or motion

6   practice, we'll leave for another day.  It's my belief that by

7   July 29th, the end of July, I can have some confidence that

8   all documents have been exchanged between the parties.  So let

9   us expect that we're going to have a telephone conference the

10  following week, and in that conference we'll talk about the

11  scheduling of depositions.  Mr. Jones, does that make sense to

12  you, sir?

13          MR. JONES:  Yes, it does, your Honor.

14          THE COURT:  Okay.  And Ms. Decastro, does that make

15  sense to you?

16          MS. DECASTRO:  Yes, your Honor.  Could I just have a

17  little bit of clarification with regard to the substantiated

18  CCRB cases.

19          THE COURT:  Yes.

20          MS. DECASTRO:  Is it possible for defendant to produce

21  the closing reports for those cases?

22          THE COURT:  Let me suggest this.  Why don't you send

23  to me *in camera* the entirety of the report, the entirety of the

24  materials on the particular substantiated incident, and I will

25  tell you what to produce to Mr. Jones.

G6t1jonc

1          MS. DECASTRO:  Okay.  Perfect.  Thank you, your Honor.

2          THE COURT:  And Mr. Jones, just so you understand what

3    that means, she's going to send me probably more than you need

4    to see and I'll tell her how much of that has to be produced to

5    you, because some of these reports contain personal

6    identification information of individuals and other materials

7    that aren't relevant and that are sensitive, so I'll look at

8    them and I'll tell her what to send to you.  Do you understand

9    that, sir?

10         MR. JONES:  Yes, I do, Judge.

11         THE COURT:  Okay.  And Ms. Decastro, is there anything

12   else that we should be talking about today?

13         MS. DECASTRO:  That's it as far as defendants, your

14   Honor.

15         THE COURT:  Okay.  I'm going to ask you, Ms. Decastro,

16   to obtain a copy of this transcript and, when you get it, to

17   please send a copy to Mr. Jones, and hopefully the mail will

18   work better this time around.

19         MS. DECASTRO:  Yes, your Honor.  I'll also file, put

20   something up on the docket on that.

21         THE COURT:  Thank you very much.

22         Mr. Jones, is that it for today, sir?

23         MR. JONES:  Yes.  Your Honor, is it possible that I

24   can get the transcript from the previous telephone conference?

25   Because that may help me as well, because I don't really

G6t1jonc

1    remember what took place back in February.

2              THE COURT:  Yes.  My staff in chambers will get you

3    your complaint and whatever transcript we can get from the

4    system.

5              MR. JONES:  Oh, okay.  Okay.

6              THE COURT:  Except for this one that hasn't yet been

7    prepared.

8              MR. JONES:  Okay.  Okay.

9              THE COURT:  All right.  Mr. Jones, is that it for

10   today, sir?

11             MR. JONES:  Yes, ma'am.  I appreciate your help, your

12   Honor.

13             THE COURT:  All right.  Thank you.

14             And Ms. Decastro, is that it for today?

15             MS. DECASTRO:  Yes, your Honor.  Thank you.

16             THE COURT:  I thank you both for participating in the

17   call.  Thank you.

18             MS. DECASTRO:  Thank you.

19             MR. JONES:  Thank you.

20             (Adjourned)

21

22

23

24

25