```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROBERT JONES,

                Plaintiff,

           v.                            14 CV 6402 (KPF)

JAMES MEEHAN, et al.,

                Defendants.

------------------------------x
                                         New York, N.Y.
                                         August 11, 2016
                                         10:00 a.m.

Before:

              HON. KATHERINE POLK FAILLA,

                                         District Judge

                        APPEARANCES

ROBERT JONES, Pro Se Plaintiff

ZACHARY W. CARTER
     Corporation Counsel of the City of New York
BY:  MARIA FERNANDA DeCASTRO
     Assistant Corporation Counsel
```

1              (In chambers; parties present telephonically)

2              THE DEPUTY CLERK:  In the matter of Robert Jones

3    versus James Meehan, et al.

4              If the parties could please identify themselves for

5    the record, beginning with plaintiff.

6              MR. JONES:  Robert Jones, plaintiff.

7              MS. DeCASTRO:  Maria DeCastro, for defendants Meehan,

8    Criollo, Sager, Thornton, Mikonland, and Rivera, from the New

9    York City Law Department.

10             THE COURT:  Okay.  Thank you very much to both of you

11   for appearing in this telephone conference this morning.  This

12   is Judge Failla; I think you figured that out already.

13             I wanted to talk to the parties about a couple of

14   remaining discovery issues and then see what the parties wanted

15   to do in terms of next steps.

16             Mr. Jones, let me ask you a couple of questions, sir.

17   I sent to you in the last, let's say, two months two different

18   pamphlets of information, one relating to discovery and one

19   relating to motions.  Did you receive both of those, sir?

20             MR. JONES:  Yes, yes, I did, your Honor.

21             THE COURT:  Okay, I'm happy to hear that.

22             Secondly, sir, I received from you in early July a

23   letter that had a transmittal letter to myself and to

24   Ms. DeCastro and a notice regarding a summary judgment motion

25   and the responses to the defendants' first set of

1    interrogatories.  Did you, in fact, send those materials to me,
2    sir?
3            MR. JONES:  Yes, I did, I did.
4            THE COURT:  Okay.
5            Ms. DeCastro, I don't know if you received a hard copy
6    of those materials but we recently had them posted on ECF, to
7    ensure that you got them.  Did you receive them?
8            MS. DeCASTRO:  Yes, your Honor.  I didn't receive a
9    hard copy but I did see them posted on the docket.
10           THE COURT:  Okay.  Well, that's helpful then.
11           Mr. Jones, did you receive discovery materials from
12   Ms. DeCastro?
13           MR. JONES:  Yes, I did, your Honor.
14           THE COURT:  Okay.  And from your perspective, sir, is
15   there anything that you asked for and did not receive or at
16   least did not receive an explanation regarding it?
17           MR. JONES:  Well, the materials that I received, they
18   pretty much started to open up a questionnaire whereas I had
19   jotted down some things that I had wanted to inquire with the
20   Court whether it would be permissible for me to file an
21   interrogatory asking the defendants numerous questions
22   regarding the materials that I have received because there was
23   some things that weren't clear that directly surrounds the
24   January 25th and the 26th and the 27th issue.  Based on that,
25   numerous questions came up and I wanted to try to get some

1    clarity on those questions because a lot of them were
2    unanswered throughout the paperwork.
3             I did receive the officer's memo book file, I received
4    that, and I received other documents which, after perusing
5    these documents, certain things became clear and there were
6    more questions that I felt I needed to ask in order to go
7    forward with this case.
8             THE COURT:  Mr. Jones, let me ask you about the nature
9    of those questions.  Are these questions about the origin of
10   certain documents or do you have substantive questions,
11   follow-up questions, about facts that are raised by the
12   materials that you received?
13            MR. JONES:  Well, there's a multiple of questions and
14   I enumerate them -- I think 33, 34 questions -- and I had
15   categorized them to the best of my ability directing the
16   question to either defendants or an individual officer that may
17   have been involved in the arrest, the presearch warrant.  The
18   25th issue, which, after reading some of the documents, it's
19   been -- I've become aware that there were numerous other
20   officers that were involved.  And these officers aren't named
21   in the suit themselves but they've played a pivotal role in the
22   arrest, they played a pivotal role in the postarrest and all of
23   the procedures, the interrogation and other things that
24   surround questioning the validity of the arrest and/or search
25   warrant itself.

1            THE COURT:  All right, Mr. Jones, let me stop you,
2    sir.  Where are those 33 or 34 questions?  Have you sent them
3    to anyone other than yourself?
4            MR. JONES:  No, not as of yet.  I had received notice
5    yesterday that I was going to have this telephone conference
6    and although I completed the first set of interrogatories that
7    I was going to send and requests for documents, I hadn't had a
8    chance to mail it but I brought it here with me so that
9    possibly I could either send it at a later date or that I could
10   make mention of the content of it during this telephone
11   conference.
12           THE COURT:  All right.  Mr. Jones, given that it's 33
13   or 34 questions, I'm not going to have you read them into the
14   record but my concern, sir, is, from my perspective, discovery
15   has concluded, so that usually means that there is an end to
16   this.  You have not explained to me why it is that you're
17   bringing these things to my attention at the conclusion of
18   discovery rather than in the course of discovery.  Certainly if
19   you had received materials that warranted follow-up discussion
20   with Ms. DeCastro, I believe it was on you to speak with
21   Ms. DeCastro about those materials.
22           So, may I hear from you why it is you're telling me
23   about this now, at the conclusion of discovery?
24           MR. JONES:  Oh, your Honor, the materials that I
25   received, I received materials in spurts.  Some of the material

1   that I recently received, a large portion of it were medical
2   records and the medical records were pertaining to issues or
3   medical conditions that were not issues at that particular
4   time.  And then I had received the transcripts from the Court,
5   and it clarified some things.  And then recently I received a
6   second defendant's initial disclosure, which outlined the
7   involvement of these officers which aren't named in the suit
8   but, again, they played a pivotal role.  And by their playing a
9   pivotal role in the arrest and everything that proceeded it, it
10  opened up a door for numerous other questions.  And just
11  receiving that, because of my -- because of the facility's
12  inability to provide adequate law library time and being able
13  to access certain materials, I was unable to put together the
14  questionnaire that would be sufficient for the Court, until
15  recently.
16           So, what I had learned in the past, I had recently
17  learned, I compiled the three of those of -- the two of those
18  things and I came up with this interrogatory, although it may
19  have been out of date and I didn't -- I don't have a lot of
20  resources here as far as mailing is concerned, I don't have a
21  lot of money for postage and I have to go through various
22  social services in order to get things mailed out.  And that's
23  primarily the reason for my delay.
24           THE COURT:  All right.  Mr. Jones, I want you to mail
25  to Ms. DeCastro as quickly as you can, but certainly within the

1    next one week, the listing that you have.
2             Ms. DeCastro, when you receive it, you will have two
3    weeks to let me know what objections you have to it; sort of on
4    a macro level, you know, if you object to all of them because
5    of their being late, or a micro level, you object to certain
6    questions for some other reason.  I will let you know,
7    Ms. DeCastro, not to poison the well, as it were, but given the
8    statements that Mr. Jones made to me, I suspect that Second
9    Circuit case law would require me to find these to be timely or
10   to find an excuse to extend discovery to include these
11   particular questions.
12            MS. DeCASTRO:  Yes, your Honor.  Could I just make a
13   comment?
14            THE COURT:  Of course.
15            MS. DeCASTRO:  Plaintiff was sent initial disclosures
16   back in March, which included the whole district attorney file,
17   which was about 900 pages of materials.  And the recent
18   materials that I got was detective file, and the detective
19   file, pretty much everything in the detective file was in the
20   DA file that was produced to him in March.  So, he had an ample
21   opportunity to look through those records that were originally
22   sent and come up with these questions.  So, I just want to put
23   that out there.
24            THE COURT:  Okay.  I shouldn't have been then so
25   conclusory in my statement that I would probably allow it.  I

1  will certainly listen to both his explanation, which I have,
2  and your responses, which there may be more than what you've
3  just given to me, but I at least want the process to be started
4  by which he sends them to you and you let me know one way or
5  the other.
6              MS. DeCASTRO:  Yes, your Honor.
7              And just one more thing, I apologize:  I'm going to be
8  on vacation from the 26th of August until the 12th of
9  September.
10             THE COURT:  Okay.  Let me, please, look at my calendar
11 then.  May I have your response by the 23rd of September,
12 please?
13             MS. DeCASTRO:  Yes.
14             THE COURT:  And then, Mr. Jones, after I get
15 Ms. DeCastro's response, I will set up another telephone
16 conference with the parties and resolve those issues.  All
17 right, sir?
18             MR. JONES:  Yes, ma'am.
19             THE COURT:  All right.
20             Now, Mr. Jones, let me proceed to another area of
21 discovery.  As you are aware, in July, Ms. DeCastro sent to me
22 certain files of the Civilian Complaint Review Board for my
23 in camera review?  And just to remind you, an in camera review
24 means I look at the materials alone to determine whether they
25 are responsive to your discovery requests or not or whether

1    there is some basis that would shield their production to you.
2         In looking at what I have found to be three different
3    files and the materials in those three files, two of them are
4    not relevant to your lawsuit but one of them is, and I will
5    order its production.
6         Ms. DeCastro, is there some confidentiality order or
7    form that your office would require Mr. Jones to sign before
8    receiving those materials?
9         MS. DeCASTRO:  Yes, your Honor, there is.  And I can
10   forward that to the Court by the end of the day, and to
11   Mr. Jones.
12        THE COURT:  Okay.
13        So, Mr. Jones, here's what we'll do:  Mr. Jones, when
14   you get that order from Ms. DeCastro, can you sign it and send
15   it back to her right away?
16        MR. JONES:  Yes, I will, Judge.
17        THE COURT:  Okay.
18        And then, Ms. DeCastro, can I understand that you will
19   send a copy of the file?  It's the incident where the
20   investigator assigned was a Francis Bolton, B-o-l-t-o-n.  And
21   if there are things such as personal information that is
22   appropriately redacted, I will let you do that, but that is the
23   file that I want produced to Mr. Jones.  Is that understood?
24        MS. DeCASTRO:  Yes, your Honor.
25        THE COURT:  Okay.  Thank you very much.

1              Inasmuch as we are still in discovery, I think it is a
2     little bit premature to talk about motion practice, so,
3     Mr. Jones, what I am going to do is, I have your letter in June
4     mentioning summary judgment.  I'm going to wait until I am
5     confident that all the discovery has been produced and that all
6     issues regarding discovery have been resolved, and then I will
7     talk to the parties further about their desires with respect to
8     summary judgment practice.  Do you understand, sir?
9              MR. JONES:  Yes, yes, I do, Judge.
10             THE COURT:  Okay.
11             Ms. DeCastro, does that make sense to you as well?
12             MS. DeCASTRO:  Yes, your Honor.
13             THE COURT:  Okay.
14             Mr. Jones, given that, is there anything else that you
15    want to bring to my attention in this telephone call?
16             MR. JONES:  There is one other issue, I believe.
17             THE COURT:  Okay.
18             MR. JONES:  I had petitioned the Department of
19    Corrections to come up with medical records dating from
20    January 28th, 2012, that I was supposed to have sent to the
21    People.  I'm in a different building now, by the way, and I
22    just wanted to place that on the record, that I sent notice of
23    the change of address to both the courts and to Ms. DeCastro.
24             The medical records that I had requested, I had
25    requested them when I was in another facility, which is the

1  Otis Bantum Correctional Facility.  I'm now in RNDC, which is a
2  totally different building and they have totally different
3  mailing procedures.  I'm going to try to make a second request
4  so that I can access those records so that in the event that
5  the courts or the defendants need verification of my claim as
6  regards to injuries, I'll be able to provide that for them.
7           THE COURT:  Okay.  So, may I understand, sir, that
8  what you're doing now is asking again for these records and if
9  and when you receive them in response to your second request,
10 or if you happen to get them in response to your first request
11 at your new location, you will send a copy of them to
12 Ms. DeCastro?
13          MS. DeCASTRO:  This is correct, your Honor, yes.
14          THE COURT:  Okay, all right.  We will take note of
15 that; we now know that.
16          Ms. DeCastro, you understand what he's just said?
17          MS. DeCASTRO:  Yes, your Honor.  My only concern is
18 that we did send him some medical records from Corizon, from
19 Rikers, so maybe if Mr. Jones can clarify what dates he's
20 looking for, I can look into whether we got those and whether
21 they match what we have.
22          MR. JONES:  The dates I'm looking for, they start from
23 the January 28th and they end at November 21st, after the case
24 in the matter of People versus Jones, the criminal case, was
25 discontinued.  And those would be the records within that

1   perimeter, which I will be pointing out some of the medical
2   conditions that was under, how my condition deteriorated as a
3   result of the health and detention for that 16-hour time
4   period, and I was denied access to medication, and how I
5   suffered renal insufficiency syndrome, and it increased now to
6   where it's at its third stage, and that was directly related to
7   the being held in detention without the medication and then
8   having to wait days after my arrest and being put through the
9   system until possibly, I think, four days before I actually had
10  access to the medications that I needed and by that time, the
11  damage had already been done.
12            THE COURT:  Mr. Jones, this is the judge.  I'm going
13  to stop you for a moment.  I believe the reason Ms. DeCastro
14  was asking these questions is because she herself, on behalf of
15  the defendants, has requested similar records from Corizon, the
16  entity providing medical services at the Rikers Island
17  facility, so it may be that she has already produced those
18  records to you.
19            Ms. DeCastro, is that the reason for your question?
20            MS. DeCASTRO:  Yes, your Honor, but now that I'm
21  looking through them, it looks like the time period that we got
22  doesn't match.  So, what I could do, just to speed up the
23  process, is send plaintiff a new release for the specified time
24  period that he wants and process that ourselves.
25            THE COURT:  Okay.

1            Mr. Jones, I think that may be quicker, given what
2    you're hoping to achieve, so I'm going to suggest, sir, that
3    you sign the two releases that you receive in the coming days
4    from Ms. DeCastro, one regarding the confidentiality that would
5    get you the CCRB file and the second, this medical release,
6    that would get you the information for which you've now just
7    defined the time period.  All right, sir?
8            MR. JONES:  Yes, that's, okay, your Honor.  Thank you.
9            THE COURT:  Okay.
10           Mr. Jones, anything else today, sir?
11           MR. JONES:  No, I believe that's it at this point,
12   Judge.
13           THE COURT:  Okay.  Thank you very much.
14           Ms. DeCastro, can I ask you, please, to obtain a
15   transcript of this proceeding and send a copy of it to
16   Mr. Jones when you receive it.
17           MS. DeCASTRO:  Yes, your Honor.  I'm sorry, one more
18   thing:  Plaintiff gave me dates but didn't give me the actual
19   year, so if he could give me the year of treatment that he's
20   looking for?
21           MR. JONES:  January 28, 2012, through November 21st,
22   2013.
23           MS. DeCASTRO:  Okay, thank you.
24           THE COURT:  All right.  Thank you, both, very much.
25           MS. DeCASTRO:  Thank you, your Honor.

1           MR. JONES:  Thank you, your Honor.
2           MS. DeCASTRO:  Bye.
3           THE COURT:  All right.
4                            * * *