subsequent to the incident at issue and to the extent it seeks information concerning allegations of misconduct against any non-party officers or seeks information concerning ongoing investigations, which are protected by the law enforcement privilege. Defendants further object to this interrogatory to the extent it seeks information concerning events that are not related to the employment of any New York City Police Officer and on the grounds that it implicates the privacy interests of defendants and/or non-parties. Defendants further object to this interrogatory to the extent it implicates the sealing provisions of New York Criminal Procedure Law §§ 160.50, 160.55. Further, defendants object to this request on the grounds that it calls for disclosure of information of a private or sensitive nature that are unrelated to the police officers' performance of their duties.

## INTERROGATORY NO. 9:

Has defendants Meehan, Criollo, Sager, Thornton, Rivera Mikolanda et al, or Detective Robert Hanah within the Past Five 5 Years Offered Testimony at a Suppression Hearing, Criminal Proceeding, or Trial for which the Plaintiff Robert Jones was the Subject. If Yes, Produce such Document or Minutes.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 9:

In addition to the General Objections, defendants object to Interrogatory No. 9 on the grounds that it is vague, ambiguous, confusing, not relevant, to the extent that the information sought is publicly available and, thus, equally available to all parties, unduly burdensome, beyond the scope of Local Civil Rule 33.3, not a proper interrogatory to the extent that it requests documents, and to the extent the information sought is not relevant nor proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any

likely benefit to plaintiff. Defendants further object to the extent that plaintiff mischaracterizes Detective Robert Hahn (identified herein as "Hanah") as a defendant in this action.

**INTERROGATORY NO. 10:**

On January 27, 2012, did defendants Meehan, Criollo, Sager, Thornton, Rivera, Mikonlanda or Hahan while conducting a Custodial Interrogation of Plaintiff, Collect, Test, or Disseminate any DNA or Genetic Material from the plaintiff without his consent. If Yes, Produce such authorization.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 10:**

In addition to the General Objections, defendants object to Interrogatory No. 10 on the grounds that it is vague, ambiguous, confusing, and not a proper interrogatory to the extent that it requests documents. Defendants further object to the extent that plaintiff mischaracterizes Detective Robert Hahn (identified herein as "Hahan") as a defendant in this action.

**INTERROGATORY NO. 11:**

On January 25, 2012. Defendants are reported to have entered the Home of Plaintiff Robert Jones, 571 Glenmore Ave without. Consent or the benefit of a Search Warrant walked up one flight of stairs inside the dwelling and observed Plaintiff in his bed room operating an alleged stolen Lap Top "Mac Book Pro". If Yes Produce the GPS Tracking Data information sheet which lead to the Location.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 11:**

In addition to the General Objections, defendants object to Interrogatory No. 11 on the grounds that it is vague, ambiguous, confusing, not relevant, nonsensical, beyond the scope of Local Civil Rule 33.3, and not a proper interrogatory to the extent that it requests documents.

→ **INTERROGATORY NO. 12:**

Has defendants Meehan, Criollo, Sager, Thornton, Rivera, Mikonlanda, Albert Velez shield # 04287, Robert Hanes shield # 15495, Victor Lopez shield # 15149 et al, ever during their employment with the City of New York "NYPD" the subject of any enter-departmental Disciplinary Proceeding due to any official misconduct while on or off duty. If yes produce such documents or Committee's decision.

→ **OBJECTION AND RESPONSE TO INTERROGATORY NO. 12:**

In addition to the General Objections, defendants object to Interrogatory No. 12 on the grounds that it is vague, ambiguous, overbroad, not a proper interrogatory to the extent that it requests documents, to the extent it seeks information that is not relevant, and to the extent the information sought is not relevant nor proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to plaintiff. Defendants further object to this interrogatory to the extent it seeks information regarding allegations of misconduct that did not result in a finding of wrongdoing or which occurred more than ten years prior to or subsequent to the incident at issue and to the extent it seeks information concerning allegations of misconduct against any non-party officers or seeks information concerning ongoing investigations, which are protected by the law enforcement privilege. Defendants further object to this interrogatory to the extent it seeks information concerning events that are not related to the employment of any New York City Police Officer and on the grounds that it implicates the privacy interests of defendants and/or non-parties. Defendants further object to this interrogatory to the extent it implicates the sealing provisions of New York Criminal Procedure Law §§ 160.50, 160.55. Further, defendants object to this request on the grounds that it calls for

disclosure of information of a private or sensitive nature that are unrelated to the police officers' performance of their duties.

### INTERROGATORY NO. 13:

On January 26, 2012, Plaintiff was the subject of an in Home unauthorized observation by Police Detectives of the Mid-town North Pct., Please Identify the Name, Shield Number, and Title of said Officers,

### OBJECTION AND RESPONSE TO INTERROGATORY NO. 13:

In addition to the General Objections, defendants object to Interrogatory No. 13 on the grounds that it is vague, ambiguous, confusing, nonsensical, assumes facts not established, and beyond the scope of Local Civil Rule 33.3.

### INTERROGATORY NO. 14:

On January 26, 2012, Plaintiff Robert Jones after being observed by Police Detectives as identified in ¶¶ 13 was subsequently.  Transferred to the Manhattan Mid-town North Pct., by Police Car, Please Identify said Transport Officer by Name, Shield Number, and Title.

### OBJECTION AND RESPONSE TO INTERROGATORY NO. 14:

In addition to the General Objections, defendants object to Interrogatory No. 14 on the grounds that it is vague, ambiguous, and confusing.

### INTERROGATORY NO. 15:

On January 26, 2012, Plaintiff Robert Jones, is reported to have arrived at the Mid-town North Pct., Escorted to a holding cell and interrogated, if Yes Please Produce the Name, Shield # Interrogation Log Book number, date and time of Arrest or Release from custody.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 15:**

In addition to the General Objections, defendants object to Interrogatory No. 15 on the grounds that it is vague, ambiguous, confusing, nonsensical, and assumes facts not established.

**INTERROGATORY NO. 16:**

On January 27, 2012, Detective Robert Hahn shield # 463 sought and was granted a search warrant to search plaintiff home location of 571 Glenmore Ave, due to the detailed description of the lay out described in the search warrant of the plaintiff home was Police Detective Robert Hahn shield # 463, observation officer On January 26, 2012?

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 16:**

In addition to the General Objections, defendants object to Interrogatory No. 16 on the grounds that it is vague, ambiguous, confusing, nonsensical, and does not call for a response.

**INTERROGATORY NO. 17:**

On January 27, 2012, defendants James Meehan # 6445, Jose Criollo # 4076, Adam Sager Tax ID # 906807, Gregory Thornton Tax ID # 919777, Robert Hahn # 463, Albert Velez # 4287, Robert Hanes #15495, Victor Lopez 4 15149, et al, sought to enforce search warrant issued to Detective Robert Hahn # 463, by the Hon Judge Armstrong date of 1/26/2012. Was the owner of 571 Glenmore Ave named in the search warrant pursuant to C.P.L. §§ 690.35.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 17:**

In addition to the General Objections, defendants object to Interrogatory No. 17 on the grounds that it is vague, ambiguous, confusing, nonsensical, and does not call for a response.

→ **INTERROGATORY NO. 18:**

On January 27, 2012, Were Police Detective James Meehan #6445, Jose Criollo # 4076, Gregory Thornton # 7690, Adam Sager Tax ID # 906807, Robert Hahn # 463, Albert Velez # 4287, Robert Hanes, # 15495, Victor Lopez # 15149, LT Felix Rivera Tax ID # 9207-65.; P.O. Steven Mikonlanda # 28952, Employees of the City of New York Police Department "NYPD" Yes or No.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 18:**

In addition to the General Objections, defendants object to Interrogatory No. 18 on the grounds that it is vague, ambiguous, confusing, and nonsensical.

**INTERROGATORY NO. 19:**

Defendants as held in ¶¶ 18 as agents were acting under the color of State Law, as such engaged in a Commercial Contract with the City of New York, Municipal Corporation, in Commerce it is a Felony for such Political or Public Officer to not after receiving Notice of a Claim 42 U.S.C. §§ 1983 for which is seeking Compensatory and Punitive Money Damages in excess of $ 1,000,000, One Million Dollars inform its insurance Bonding Company of such claims,

And it is a felony for the insurance Bonding Company upon timely Notice of Claim, "NOT TO" Pay the claim as are set forth in the matter of Jones v. Meehan, 2014-cv-06402 (KPF); Product all relevant Bonding information and its Commercial Code.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections, defendants object to Interrogatory No. 19 on the grounds that it is vague, ambiguous, confusing, nonsensical, beyond the scope of Local Civil Rule 33.3, and on the grounds that it is not a proper interrogatory to the extent that it requests documents.

**INTERROGATORY NO. 20:**

On January 30, 2012, Plaintiff Robert Jones was as a direct and approximate result of his illegal Arrest and Unconstitutional Detention, Suffered Eviction from his Rockaway House Three Quarter shelter Thus, resulting in lost personal property, Rehabilitation Therapy Substance Abuse Treatment for which Mr. Jones was amply qualified Pursuant to Americans with Disabilities Act "ADA" 42 U.S.C §§ 12101-12134 Rehabilitation Act "RA" 29 U.S.C. §§ 504, 701 and 794.

Arrest/Eviction is allege herein to have violated Article 7 of the State Real Property Action and Proceedings Law "RPAPL" and New York City Administrative Code §§ 26-521, Due Process Protection Rights Secured under the 14th Amendment, Did the Plaintiff arrest result in 22 month of detention under indictment # 480/2012. Yes or No.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections, defendants object to Interrogatory No. 20 on the grounds that it is vague, ambiguous, confusing, nonsensical, assumes facts not established, and beyond the scope of Local Civil Rule 33.3.

**INTERROGATORY NO. 21:**

Is it a basic principal of the Fourth Amendment Law that all Search and Seizure inside the home without an Arrest or Search Warrant are presumptively unreasonable, and that all fruits of the arrest and entry should have been suppressed Yes or No.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 21:**

In addition to the General Objections, defendants object to Interrogatory No. 21 on the grounds that it is vague, ambiguous, confusing, nonsensical, and beyond the scope of Local Civil Rule 33.3.

## INTERROGATORY NO. 22:

That from January 28, 2012 throughout November 21, 2013, did the plaintiff maintain the right to be arrested pursuant to an Arrest Warrant Yes or No.  If Yes Produce said Arrest Warrant.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 22:

In addition to the General Objections, defendants object to Interrogatory No. 22 on the grounds that it is vague, ambiguous, confusing, nonsensical, beyond the scope of Local Civil Rule 33.3, and on the grounds that it is not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 23:

Produce all expert disclosure required pursuant to Federal Rules of Civil Procedure Rule 26 (a)(2) any drafts of any reports or other disclosures required of Fed.R.civ.P. 26 (a)(2)(b)(2) and (C) any and all e-mails correspondence between Defendants Counsel, or any one, acting for or on behalf of defendants or defendants counsel, and any expects identified in response to any and all CCRB and IAB, Internal Affairs Unit.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 23:

In addition to the General Objections, defendants object to Interrogatory No. 23 on the grounds that it is vague, ambiguous, confusing, nonsensical, beyond the scope of Local Civil Rule 33.3, and on the grounds that it is not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 24:

City of New York, is a Municipal Corporation "Entity" Organized under the Laws of the State of New York, City of New York Police Department is a Department or Agency of

the State/City of New York, in the capacity must operate under the color of State Law.  Confirm

Yes or No

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 24:

In addition to the General Objections, defendants object to Interrogatory No. 24

on the grounds that it is vague, ambiguous, confusing, nonsensical, and beyond the scope of

Local Civil Rule 33.3.

## INTERROGATORY NO. 25:

On January 25, 2012, Did Detective Robert Hahn shield # 463 Obtain any written

consent from Mr. Kennith Elmore to enter the location of 571 Glenmore Ave if Yes Produce said

Written Consent.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 25:

In addition to the General Objections, defendants object to Interrogatory No. 25

on the grounds that it is vague, ambiguous, confusing, nonsensical, beyond the scope of Local

Civil Rule 33.3, and on the grounds that it is not a proper interrogatory to the extent that it

requests documents.

## INTERROGATORY NO. 26:

On January 25th throughout January 27, 2012, did Plaintiff have the rights of an

occupant within the House of 571 Glenmore Ave which would entitle him to Fourth Amendment

Protection against unlawful and unreasonable Search and Seizure.  If yes confirm, if No Please

explain.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 26:

In addition to the General Objections, defendants object to Interrogatory No. 26

on the grounds that it is vague, ambiguous, confusing, nonsensical, beyond the number of

interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and beyond the scope of Local Civil Rule 33.3

## INTERROGATORY NO. 27:

On January of 2012, there was a Search Warrant Pre-Execution.  Diagram of the inside of Plaintiffs Home used to support the Search Warrant what was the date and time diagram was made and by whom, Name the Officer, by Shield Number, if other than LT Felix Rivera Tax ID # 920765.  Produce said Document.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 27:

In addition to the General Objections, defendants object to Interrogatory No. 27 on the grounds that it is vague, ambiguous, confusing, compound, nonsensical, assumes facts not established, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and on the grounds that it is not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 28:

On January 25, 2012, was the Plaintiff Robert Jones Interrogated at the Mid-town North Pct., if Yes, was said Interrogatory Video Tape Recorded Produce such Recording.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 28:

In addition to the General Objections, defendants object to Interrogatory No. 28 on the grounds that it is vague, ambiguous, confusing, compound, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and on the grounds that it is not a proper interrogatory to the extent that it requests video recordings.

**INTERROGATORY NO. 29:**

Please identify the person by Name and Shield #, who authorized the Statutory Authority to use "GPS" Tracking Device in the location of stolen electronic "Lap Top" Arrest Evidence PETS No.          , and Tracking Program installed Identification Number.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 29:**

In addition to the General Objections, defendants object to Interrogatory No. 29 on the grounds that it is vague, ambiguous, confusing, compound, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, and beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 30:**

On January 25, 2012, Or any other time relevant herein was Detective Robert Hahn shield # 463 during his first encounter with plaintiff accompanied by any member of the State of New York, Division of State Parole if Yes identify said Parole Officer.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 30:**

In addition to the General Objections, defendants object to Interrogatory No. 30 on the grounds that it is vague, ambiguous, confusing, compound, nonsensical, not relevant, and beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1).

**INTERROGATORY NO. 31:**

On January 26, 2012, Did Defendants Meehan, Criollo, Sager, Thornton, Rivera, and Police Detective Robert Hahn # 463 after execution of Search Warrant # N009s/2012 act in accordance with NYPD enter Departmental Procedure P.G. 212-75, pursuant to Overdue Post-Search Warrant Report Protocol, if Yes Produce said document.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 31:**

In addition to the General Objections, defendants object to Interrogatory No. 31 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents. Defendants further object to the extent that plaintiff mischaracterizes Detective Robert Hahn as a defendant in this action.

→ **INTERROGATORY NO. 32:**

That from January 26, 2012, throughout March 12, 2012, did defendants Meehan, Criollo, Sager, Thornton, Rivera, or Det. Robert Hahn shield # 463 receive Notice from the NYPD Intelligence Division, that the Mid-town North Pct. Detectives Squad, failed to file any Post Warrant Execution forms:  If Yes Produce a copy of said Document.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 32:**

In addition to the General Objections, defendants object to Interrogatory No. 32 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents. Defendants further object to the extent that plaintiff mischaracterizes Detective Robert Hahn as a defendant in this action.

**INTERROGATORY NO. 33:**

On March 15, 2012, did the Chief Detective Office C.I.R.D. Investigation Liaison Unit, Notify Det. Robert Hahn # 463 and Police Supervisor LT Felix Rivera Tax ID # 920765 that overdue Post Warrant UF 49 form should be prepared in all cases and faxed to the

Intelligence Division.   If Yes Produce the Procedural Outline use in the Search Warrant # Noos9/2012.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 33:

In addition to the General Objections, defendants object to Interrogatory No. 33 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 34:

On January 26, 2012, and all other times relevant herein did Det. James Meehan, Jose Criollo, Gregory Thornton, Adam Sager, and Robert Hahn # 463, Robert Hanes # 15495, Albert Velez # 4287, Victor Lopez # 15149, LT Felix Rivera Tax ID # 920765, et al, et seq. Follow all relevant Enter-Departmental "NYPD" Policy, Procedure, Rules, Regulation, Directive and Protocol after executing Search Warrant # Noos9/2012, and file timely Post Search Warrant Execution form and fax said form to the Intel case data Service Unit at phone number 646 805-6298 if Yes Produce said forms, If No please explain Why Not.?

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 34:

In addition to the General Objections, defendants object to Interrogatory No. 34 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 35:

On November 21, 2013, Defendants as held in ¶¶ Q 1-34 after failure to Prosecute the matter of People of the State of New York, Indictment # 480/2012. Pursuant to Fed. R.civ. P.

41(a) Upon Dismissal was under legal obligation to Seal All Records of Arrest.  Pursuant CPL §§ 160.50 and 160.55.  If Yes Produce said execution form.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 35:**

In addition to the General Objections, defendants object to Interrogatory No. 35 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

→ **INTERROGATORY NO. 36:**

After November 21, 2013, Did Plaintiff receive any and all Personal identification evidence including Photographs Taken Finger Prints, DNA or Biological Evidence returned to him or Destroyed Pursuant to CPL §§ 160.50 and 160.55, after a Prior Acquittal or Dismissal, If Yes Produce such return forms, If No Why Not.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 36:**

In addition to the General Objections, defendants object to Interrogatory No. 36 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

**INTERROGATORY NO. 37:**

Plaintiff for the purpose of these interrogatories seeks complete disclosure of any case-related Search Warrants, Warrant Application, Supporting Affidavits, Transcripts of Testimony or oral Communication in Support, and Police Inventories of Seized Property. Produce such Documents.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 37:**

In addition to the General Objections, defendants object to Interrogatory No. 37 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), not a proper interrogatory to the extent that it requests documents, and does not call for a response.

**INTERROGATORY NO. 38:**

Defendants Meehan, Criollo, Sager, Thornton, Rivera, and Robert Hahn # 463 et al, et seq. On January 25, 2012, are reported to have obtained fruits of an unlawful observation of the Plaintiff while in his Home, ... during this time did any Police Officer "Interview" or "Question" the Plaintiff at His Home. If Yes, Produce said documents.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 38:**

In addition to the General Objections, defendants object to Interrogatory No. 38 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), not a proper interrogatory to the extent that it requests documents, assumes facts not established, and does not call for a response.

**INTERROGATORY NO. 39:**

That pursuant to Payton v. New York, 445 U.S. 573 (1980) for which plaintiff maintains want of relief police must base their Approach, Questioning, and Seizure required suppression hearing did the Plaintiff receive such hearing. If Yes, Produce said documents if No, explain Why Not?

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 39:

In addition to the General Objections, defendants object to Interrogatory No. 39 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), not a proper interrogatory to the extent that it requests documents, assumes facts not established, and to the extent that the information sought is publicly available and, thus, equally available to all parties.

## INTERROGATORY NO. 40:

On January 25, 2012, Did Detective Robert Hahan # 436 Receive authorization from the Complaining Witness to use and operate The Apple Computer "Find My Phone" Program Cell site to locate the General Vicinity of 571 Glenmore Ave.  If Yes, Produce said document

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 40:

In addition to the General Objections, defendants object to Interrogatory No. 40 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), not a proper interrogatory to the extent that it requests documents, assumes facts not established, and to the extent that the information sought is publicly available and, thus, equally available to all parties.

## INTERROGATORY NO. 41:

On January 25, 2012, Did Detective Robert Hahn # 436 or LT Felix Rivera Tax ID # 920765, James Meehan # 6445, Jose Criollo # 4076, Adam Sager Tax ID # 902338, Thornton Gregory Tax ID # 919777, use or operate a Simulator known as "Sting Ray"

"Hailstorm" or a "Triggerfish" to find the a Computer generated "Ping" from a Mac Book Pro in the vicinity of 571 Glenmore Ave. If yes produce such document Mobile Tracking Technology.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 41:**

In addition to the General Objections, defendants object to Interrogatory No. 41 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

→ **INTERROGATORY NO. 42:**

On January 26, 2012, Plaintiff is reported to have been held in Police Custody for over 16 hours during which he was deprived access to adequate amounts of drinking water resulting in dehydration cause by lack of medication with an increased right kidney measurement of 11.0x 4.0 Compared to the left kidney which measures 10.6x 5.2 indicating Renal Insufficiency Syndrome Disease "e-GFR value of 85>60 MI/min" what is the procedure for detainees in need of emergency Medication while in police custody?

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 42:**

In addition to the General Objections, defendants object to Interrogatory No. 42 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

**INTERROGATORY NO. 43:**

On January 26, 2012, Detective Jose Criollo # 4076 did during the plaintiffs police custodial interrogation conduct a search of an Apple MacBook Pro, alleging to belong to Complaint Jimmie D, with a Serial Number of W861z8551vi3 and or Serial Number Co2fc7zmd

was this search authorized by LT Felix Rivera Tax ID # 920765.  If Yes Produce a copy of such written authorization, If No identify said authority by Name, Rank, and Shield #.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 43:

In addition to the General Objections, defendants object to Interrogatory No. 43 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), and not a proper interrogatory to the extent that it requests documents.

## INTERROGATORY NO. 44:

On January 27, 2012, Did defendants Meehan, Criollo, Sager, Thornton, Rivera, Robert Hahn # 463, Albert Vollez # 4287, Victor Lopez # 15149, Robert Hanes # 1545, et al, et seq., Use said Apple MacBook Pro serial number W86128551vj3 or Apple MacBook Pro serial number co2fc7zmd to target the address of 571 Glenmore Ave.  If Yes Produce a copy of the Webmail address, Name of the person to whom the site is linked, Date are, time of communication.  If No explain.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 44:

In addition to the General Objections, defendants object to Interrogatory No. 44 on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), to the extent that it implicates the privacy interests and personal safety of the individual defendants and/or non-parties, not a proper interrogatory to the extent that it requests documents, and to the extent the information sought is not relevant nor proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to plaintiff.

**INTERROGATORY NO. 45:**

On January 17, 2012, Defendants are reported as ace held in ¶¶ 43-44 to have use

a Tracking Device known as "StingRay" "Hailstorm" or a "Triggerfish" and the cell site location

of information which allowed Police to get the general vicinity of 571 Glenmore Ave, If Yes

Produce all written consent issued by the "FBI" to use such device. If No explain.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 45:**

In addition to the General Objections, defendants object to Interrogatory No. 45

on the grounds that it is vague, ambiguous, compound, confusing, nonsensical, not relevant,

beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under

Fed. R. Civ. P. 33(a)(1), to the extent that it implicates the privacy interests and personal safety

of the individual defendants and/or non-parties, not a proper interrogatory to the extent that it

requests documents, and to the extent the information sought is not relevant nor proportional to

the needs of the case considering the amount in controversy, the importance of the discovery in

resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to

plaintiff.

**INTERROGATORY NO. 46:**

On January 24, 2012, Defendants Meehan, Criollo, Sager, Thornton, Rivera,

Robert Hahn # 463, Albert Vollez # 4287, Victor Lopez # 15149, Robert Hanes # 15495, et al.

are reported to have use a tracking system cell site locator known as "Find my Phone" which like

the "Triggerfish" "StingRay" "Hailstorm" who authorized to monitor said tracing systems which

located the allege stolen Addle MacBook Pro found... at 571 Glenmore Ave. identify said Person

by Name Rank and shield number.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 46:**

In addition to the General Objections, defendants object to Interrogatory No. 46 on the grounds that it is vague, ambiguous, confusing, nonsensical, not relevant, beyond the scope of Local Civil Rule 33.3, beyond the number of interrogatories allowed under Fed. R. Civ. P. 33(a)(1), to the extent that it implicates the privacy interests and personal safety of the individual defendants and/or non-parties, not a proper interrogatory to the extent that it requests documents, and to the extent the information sought is not relevant nor proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to plaintiff.

Dated:      New York, New York
            September  22, 2016

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
100 Church Street, Room 3-201
New York, New York 10007
(212) 356-2658

By      _____/s/_____

MARIA F. DECASTRO
*Assistant Corporation Counsel*

TO:    VIA ECF and EMAIL
       Honorable Katherine Polk Failla
       United States District Judge
       United States District Court
       Southern District of New York
       40 Foley Square
       New York NY 10007

       BY FIRST-CLASS MAIL
       Robert Jones

#141-15-02468
*Plaintiff* Pro Se
RNDC
11-11 Hazen Street
E. Elmhurst, NY 11370

EXHIBIT "Q"

"F"
"gg"



**Health**
**Correctional Health Services**

## JONES, ROBERT

NYSID: 0475656Q BookCase: 3491201713
Facility Code: MDC  Housing Area: 5S
48 Y old Male, DOB: 01/11/1964
571 GLENMORE AVE, A2, BKLYN, NY-11207
Insurance: Self Pay

01/28/2012

Intake Physical: Craig Metroka, MD

### Current Medications
None

### Past Medical History
Chickenpox
STD
Hypertension
Liver disease

### Social History
Intake social history. Drug use: currently using drugs: No, ever used drugs: Yes, what drugs did you use: heroin,pain medication,other, (specify): Percocet , when last used: 09/1998, currently in methadone program: No, Ever accidentally overdosed: No, Ever used a needle to inject drugs: No. Smoking: are you a smoker: former . Alcohol: do you drink: No. Violence: ever hit or assaulted anyone: No, ever been charged with sexual offense: No, ever been assaulted: Yes, ever been a victim of sexual abuse: No. Education: grade level completed: some high school , learning disability: No, were you in special education: No. Sexual history: sexually active with: women , current number of sexual partners: 1, do you and your partner use condoms: Yes.

### Allergies
N.K.D.A.

### History of Present Illness
New Intake:
  Medical History Current medical provider: jail/prison , Name/address of medical provider: Sing Sing, when last seen by medical provider: 1-3 years ago, disabilities: No, chickenpox: yes, STD: Yes, type: other, (specify): Hepatitis C, treated: Yes, hypertension: Yes, year diagnosed: 2008, heart disease: No, diabetes: No, seizures: No, Liver disease: Yes, what type: Hepatitis C, treated: yes, treatment history: completed, kidney disease: No, cancer: No. Asthma History asthma: No. TB History Have you ever had active TB: no , History of positive Tuberculin Skin Test: No, TB symptoms: None, Recent exposure to TB: no, No history of TB or LTBI: Asymptomatic. HIV History HIV/AIDS: no , have you ever been tested for HIV: Yes, date last tested: 11/2011, result of last test: negative, do you want to have HIV test today: yes. Mental Health History Mental health or Nervous problems: Yes, What type: Anxiety,Other, Required hospitalization: No, in treatment: No, family history of suicide: No, Trouble falling or staying asleep: Yes, Changes in appetite or eating habits: No, You feel hopeless or worthless: Yes, Little interest or pleasure in doing things: No.

HIV Testing and Counseling:
  Pre Testing Counseling: Reason for Testing: Wants to know status, Risk Factors: Sex with female, Suicide Risk No active suicidal ideation, Homicide Risk No homicidal ideation,Does not want to hurt anyone,If tests positive, will not hurt anyone, Domestic Violence Screen Patient with no history of abuse,Patient does not feel threatened by current/past partner, Coping Mechanism/Support System: Patient has good support systems,Patient has supportive partner,Patient has supportive family,Patient has strong coping mechanisms, Patient counseled on: Nature of HIV/AIDS,Modes of transmission,Voluntary testing,Benefits of knowing HIV status,Confidentiality,Mandated reporting of positives. Informed Consent: Informed Consent Obtained Yes. Post Test Counseling - Positive: Patient counseled on Meaning of positive result,Need for medical follow up,Availability of medical care in jail,Benefits of partner notification. Post Test Counseling - Negative: Patient counseled regarding: Meaning of negative result,Prevention strategies,Safe sex practices,Availability of condoms.

### Vital Signs

| Ht |
| --- |
|  |

---

Patient: JONES, ROBERT  DOB: 01/11/1964  Progress Note: Craig Metroka, MD  01/28/2012
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

**DEF 160**

```
                                              >60
mL/min/1.73 m2
    - NOTE: GFR (Glomerular Filtration Rate) calculation
utilizes the MDRD formula
         (Modification of Diet in Renal Disease Study
Group) and assumes a normal
         adult body surface area of 1.73. If the
patient is African American
         multiply result reported by 1.21. (Ref.
National Kidney Disease Educs.
         Program.)
    - NOTE: A calculated GFR of <60 mL suggests chronic
kidney disease, but
         only if found consistently over at least 3
months. A calculated
         result of <15 mL is consistent with renal
failure.
```



| | | |
|---|---|---|
| BUN/Creat Ratio | 11.8 | 10.0-28.0 |
| | | 8.6-10.2 |
| Calcium | 9.3 | mg/dL |
| Uric Acid | 5.9 | 3.4-7.0 mg/dL |
| Bilirubin, Total | 0.3 | 0.1-1.0 mg/dL |
| LD | 394 | 135-225 U/L |
| Alk Phos | 58 | 40-129 U/L |
| AST | 16 | <40 U/L |
| Phosphorus | 3.8 | 2.7-4.5 mg/dL |
| ALT | 13 | <41 U/L |
| GGTP | 18 | 10-71 U/L |
| Cholesterol | 149 | <200 mg/dL |

Patient: JONES, ROBERT DOB: 01/11/1964
Patient: JONES, ROBERT DOB: 01/11/1964
Patient: JONES, ROBERT DOB: 01/11/1964
Patient: JONES, ROBERT DOB: 01/11/1964

**Assessments**
1. Unspecified essential hypertension - 401.9 (Primary), Well controlled
2. Hyperlipemia - 272.4
3. Chronic hepatitis C - 070.44, Undetectable
4. Tinea cruris - 110.3

**Treatment**
**1. Unspecified essential hypertension**
Continue losartan, adherance stressed, diet and exercise encouraged,
f/u in 8 weeks.

**2. Hyperlipemia**
Low fat diet, weight reduction encouraged.

**3. Chronic hepatitis C**
Pt was treated in 2007 and has remained undetectable with normal
liver function test. f/u in 1 year.

Patient: JONES, ROBERT   DOB: 01/11/1964   Progress Note: Frantz Medard, MD   03/21/2012
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

http://10.156.157.40:8080/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterID=..   4/23/2012

DEF 143

Name: JONES, ROBERTDOB: 01/11/1964Sex: maleTel:

**REPORT DETAILS**

Name: **HEPATITIS C, RNA, bDNA, QUANT**Accession.ID: 106466157Lab Ref Id: i06466157

**REPORT DATES**

Order: 01/28/2012Collection: 01/28/2012 17:13:00Report: 02/01/2012 12:08:01Result: 02/01/2012 11:38:00

| NAME | VALUE | REF RANGE |
|------|-------|-----------|
| HEP.C,RNA,bDNA,QNT | <3200 | <3200 copies/mL |

- NOTE: The result for Hepatitis C virus (bDNA) was less than
- 3200 copies/mL (<615 IU/mL) which is below the limits of
- detection for this method.
- NOTE: Hep. C RNA/Viral load,bDNA performed using Siemens bDNA
  Assay.

| NAME | VALUE | REF RANGE |
|------|-------|-----------|
| HEP.C,RNA,bDNA,QNT | <615 | <615 IU/mL |

- NOTE: The result for Hepatitis C virus (bDNA) was less than
- 3200 copies/mL (<615 IU/mL) which is below the limits of
- detection for this method.
- NOTE: Hep. C RNA/Viral load,bDNA performed using Siemens bDNA
  Assay.

Order: 01/28/2012Collection: 01/28/2012 17:13:00Report: 02/01/2012 12:08:01Result: 02/01/2012 11:38:00

| NAME | VALUE | REF RANGE |
|------|-------|-----------|
| Total Protein | 7.2 | 5.9-8.4 g/dL |
| Albumin | 4.3 | 3.5-5.2 g/dL |
| Globulin | 2.9 | 1.7-3.7 g/dL |
| A/G Ratio | 1.5 | 1.1-2.9 |
| Glucose | 92 | 70-99 mg/dL |
| Sodium | 142 | 133-145 mmol/L |
| Potassium | 4.1 | 3.3-5.3 mmol/L |
| Chloride | 104 | 96-108 mmol/L |
| $CO_2$ | 25 | 22-29 mmol/L |
| BUN | 15 | 6-20 mg/dL |
| Creatinine | 1.27 | 0.90-1.30 mg/dL |

- NOTE: The creatinine reference ranges have changed effective 11/7/11.

| NAME | VALUE | REF RANGE |
|------|-------|-----------|
| e-GFR | 61 | >60 mL/min |

- GFR MALE/FEMALE REFERENCE RANGE

Patient: JONES, ROBERT DOB: 01/11/1964

Patient: JONES, ROBERT   DOB: 01/11/1964   Progress Note: Frantz Medard, MD   03/21/2012
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

http://10.156.157.40:8080/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterID=...   4/23/2012

DEF 142



**JONES, ROBERT**

### Health
### Correctional Health Services

NYSID: 04757650Q  BookCase: 3491201713
Facility Code: GMDC  Housing Area: M12A
48 Y old Male, DOB: 01/11/1964
571 GLENMORE AVE, A2, BKLYN, NY-11207

Insurance: Medicaid
Appointment Facility: George Motchan Detention Center (C-73)

04/17/2012

Kecia Harris, LMSW

**Current Medications**
Losartan Potassium 25 MG Tablet 25 mg
Daily, stop date 04/29/2012
Prozac 20 mg Capsule 80 mg Every Morning,
stop date 05/02/2012
HydrOXYzine HCl 50 mg Tablet 100 mg At
Bedtime, stop date 05/02/2012
Miconazole Nitrate 2 % Cream apply Twice a
Day, stop date 07/09/2012
Clotrimazole 1 % Solution apply Twice a Day,
stop date 07/09/2012

**Past Medical History**
Hypertension
Liver disease

**Reason for Appointment**
1. MH Clinicians Progress Note

**History of Present Illness**
TEMPLATES:

MH CLINICIANS PROGRESS NOTE
SUBJECTIVE:
  Subjective
   ▪ *Pt. was seen for his scheduled MH f/u session. Pt. reports depressed and irritable moods, and explores triggers to mood disturbance. Pt. reflects upon past choices and familial relationships. Pt. discusses legal stressors and coping mechanisms. MH support provided.*

Examination

OBJECTIVE:
  Objective:
   ▪ *Pt. appears clinically stable and adequately compensated for GP. Pt. is calm, cooperative, and future oriented. Pt. presents without distress or evidence of psychosis. Pt. denies suicidal/homicidal ideation.*
  MENTAL STATUS:
  Appearance:
   ▪ *Chronological Age, Normal Weight, Well Groomed .*

  Mood:
   ▪ *Neutral .*

  Affect:
   ▪ *Mood Congruent .*

  Impulse control:
   ▪ *Adequate .*

  Thought process:
   ▪ *Spontaneous, Organized, Relevant, Goal Directed .*

  Perceptual disturbance:

Patient: JONES, ROBERT   DOB: 01/11/1964   Progress Note: Kecia Harris, LMSW   04/17/2012
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

http://10.156.157.40:8080/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterID=...   4/23/2012

DEF 140

 **NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

n y c . g o v / h h c



Patsy Yang, DrPH
Senior Vice President
Correctional Health Services

Correctional Health Services
Medical Records Unit
55 Water Street, 18th Floor
New York, NY 10041

DATE:  6/16/16

TO:  Law Department

FROM:  Medical Records Unit

SUBJECT:  Request for Medical Records

NAME  Jones, Robert

B&C:  141-15-02468

Dear Sir/Madam:

Enclosed is a copy of the CONFIDENTIAL medical record of the above named person and the **Prohibition on Redisclosure.**

Please complete the bottom section of this form and return to the Medical Records Unit at the above address or fax it to 646-614-0290. This will serve as a receipt and indication that your request has been processed and that you have received the enclosed **Prohibition on Redisclosure.**

I have received a copy of the medical record of _____ and the enclosed **Prohibition on Redisclosure.** I understand that the confidential medical record of _____ cannot be disclosed except where permitted by state, federal and local laws and regulations.

Date: _____

Agency: _____

Name/Title: _____

Signature: _____

**DEF 1606**

NYC
HEALTH+
HOSPITALS

Correctional Health Services
125 Worth Street
New York, NY 10013

## CERTIFICATION OF CORRECTIONAL HEALTH SERVICES RECORDS

I, Marella Lowe, Assistant Director of Medical Records for Correctional Health Services, do hereby certify that the record attached is in custody of and is an accurate and complete record of the condition, act, transaction, occurrence or event of this institution concerning:

Patient's Name: Jones, Robert

Book and Case Number: 141-15-02468

I further certify that the record was made in the regular course of business of this institution and it is the regular course of business of this institution to make such record, and such record is made at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter.

_Marella Lowe_

Marella Lowe
Assistant Director of Medical Records
Correctional Health Services
Date: 6/1/16

**DEF 1608**

☑ No

**\* diabetes**

☐ Yes

☑ No

**\* seizures**

☐ Yes

☑ No

**\* Liver disease**

☑ Yes

☐ No

**\* what type**

☑ Hepatitis A

☑ Hepatitis B

☑ Hepatitis C

☐ Alcohol related

☐ Fatty liver

☐ Cirrhosis

☐ Don't know

☐ Other

**treated**

☑ yes

☐ no

**treatment history**

☑ completed

☐ incomplete

☐ failed

☐ current

**\* kidney disease**

☑ Yes

☐ No

**type**

☐ kidney stones

- ☐ polycystic kidney disease
- ☐ one kidney
- ☑ chronic renal insufficiency
- ☐ end stage renal disease
- ☐ other
- ☐ don't know

**\* cancer**

- ☐ Yes
- ☑ No

Next >>    Save & Next >>

**Assessments**
1. Axis I: PTSD (Posttraumatic stress disorder) (NOS) - 309.81
(Primary)
2. Axis II: Antisocial personality disorder - 301.7
3. Axis III: HTN [Hypertension] - 401.9
4. Chronic hepatitis C - 070.44
5. Renal insufficiency syndrome NOS - 586
6. Hyperlipemia - 272.4
7. Closed fracture of femur NOS - 821.00
8. Anemia NOS - 285.9
9. Sciatica - 724.3
10. OSTEOARTHROS NOS-PELVIS - 715.95
11. Chronic kidney disease, stage II - 585.2
12. Obesity, unspecified - 278.00

Axis IV: Other psychosocial and environmental problems,
Legal/criminal system problems

Axis V: GAF 61-70 Some mild symptoms. (e.g., depressed mood); or
some difficulty in social, occupational, or school functioning.

**Treatment**
**1. PTSD (Posttraumatic stress disorder) (NOS)**
Start Fluoxetine HCl Capsule, 80 mg, 80 mg, Orally, At Bedtime, 28
days, Pharmacy
Start Vistaril Capsule, 50 mg, 2 caps, Orally, At Bedtime, 28 days,
Pharmacy
Start Risperdal Tablet, 0.5 MG, 1.5 mg, Orally, At Bedtime, 28 days,
Pharmacy

**2. Others**
Stop Fluoxetine HCl Capsule, 80 mg, 1 cap, Orally, At Bedtime, 10 days,
Pharmacy
Stop Vistaril Capsule, 50 mg, 2 caps, Orally, At Bedtime, 10 days,
Pharmacy
Stop Risperdal Tablet, 0.5 MG, 1.5 mg, Orally, At Bedtime, 10 days,
Pharmacy

**Follow Up**
4 Weeks (Reason: Medication follow up)

Disposition: GP with MH follow up-Clinician/Psychiatrist

**Appointment Provider: Keisha Coads,R-PAC**

Patient: JONES, ROBERT   DOB: 01/11/1964   Progress Note: Keisha Coads,R-PAC   07/28/2015
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

https://chsricbpdlb.riepf.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterI...   9/21/2015

Lumbago
Hyperlipidemia
Hyperglycemia
Chronic kidney disease, stage III
Chronic kidney disease, stage III
Chronic kidney disease, unspecified stage

**Allergies**
N.K.D.A.

**Assessments**
1. HTN [Hypertension] - 401.9

**Treatment**
**1. HTN [Hypertension]**
Start Losartan Potassium Tablet, 50 mg, 1 tablet, Orally, Daily, 60 days, Pharmacy, Notes: Pharmacy
Start Norvasc Tablet, 10 mg, 1 tablet, Orally, Daily, 60 days, Pharmacy, Notes: Pharmacy

---

**Patient: JONES, ROBERT   DOB: 01/11/1964   Provider: Park, Joon, MD   07/29/2015**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

NYSID: 04757650Q  BookCase: 1411502468
Facility Code: OBCC  Housing Area: 5L
Patient: JONES, ROBERT
Account Number: 188936
DOB: 01/11/1964  Age: 52 Y  Sex: Male
Phone:
Address: 494 HENDRIX ST, PVT, A2, BK, NY-11207

Appointment Provider: Christina Pillora, PT  ←
Date: 04/21/2016

## Subjective:

**Chief Complaints:**
1. specialty clinic P.T..

**Medical History:** Hypertension, hepatitis C hx with s/p tx, Hx of renal insufficiency, ROUTINE MEDICAL EXAM, ROUTINE MEDICAL EXAM, NAIL ANOMALIES NEC, Tinea, Costochondritis, Closed fracture of shaft of tibia NOS, Fracture of shaft of femur, SPRAIN LUMBAR REGION, Arthralgias, FRACTURE NOS-CLOSED, Perianal itch, Difficulty in walking, Dental caries extending into pulp, Chondromalacia of patella, Closed fracture of patella, Closed fracture of base of neck of femur, Closed fracture of intertrochanteric section of femur, Lumbago, Hyperlipidemia, Hyperglycemia, Chronic kidney disease, stage III, Chronic kidney disease, stage III, Chronic kidney disease, unspecified stage.

**Medications:** Losartan Potassium 50 MG Tablet Total Dose: 50 mg Daily, stop date 05/08/2016, KOP: No, Drug Source: Pharmacy, Notes: Pharmacy, Norvasc 10 MG Tablet Total Dose: 10 mg Daily, stop date 05/08/2016, KOP: No, Drug Source: Pharmacy, Notes: Pharmacy, Aspirin EC 81 MG Tablet Delayed Release Total Dose: 1 tab Daily, stop date 06/22/2016, KOP: No, Drug Source: Pharmacy, Risperdal 2 MG Tablet Total Dose: 2mg At Bedtime, stop date 05/09/2016, Drug Source: Pharmacy-Non Carry, Prozac 20 MG Capsule Total Dose: 80mg At Bedtime, stop date 05/09/2016, Drug Source: Pharmacy-Non Carry, Vistaril 50 MG Capsule Total Dose: .100mg At Bedtime, stop date 05/09/2016, Drug Source: Pharmacy-Non Carry

## Objective:

## Assessment:

**Assessment:**
1. Acquired deformity of shoulder NEC - 736.89

## Plan:

1. **Acquired deformity of shoulder NEC**
Notes: PT, visit # 15. Pt. was seen for HMP and Estim to right shoulder, RROME to both UE with 3lbs weight, TP thera ex. Pt. reported that his right shoulder is not too bad today. Pt. tolerated the treatment well.

**Disposition:**
Notes: Pt. will be discharge in PT today. He reported that his shoulder is not too bad today and was advised to continue the home exericses given and to see a doctor if the pain worsens to seek other treatment alternative. No need to reschedule.

Appointment Provider: Christina Pillora, PT
Patient: JONES, ROBERT  DOB: 01/11/1964  Date: 04/21/2016

[X]

Electronically signed by Christina Pillora PT, PT on 04/21/2016 at 11:37 AM EDT
Sign off status: Completed

Addendum:
04/25/2016 04:59 PM Walker, Curt > Patient was seen. Consult reviewed. D/C PT

**DEF 1642**

Does patient have Chronic Kidney Disease? _Yes_ ←
Is the patient on an ACE inhibitor or ARB? _Yes_
Advised on medications to avoid in CKD (e.g., NSAIDs, antacids, laxatives, salt substitutes)? _Yes_
CKD Stage (based on last eGFR): _II (60 - 89)_ ←

## Vital Signs

| BP | | |
|---|---|---|
| 121/82 | 09/08/2015 07:02:07 PM | Roselyne Chery-Cyrille |
| **Pulse** | | |
| 72 | 09/08/2015 07:02:07 PM | Roselyne Chery-Cyrille |
| **RR** | | |
| 14 | 09/08/2015 07:02:07 PM | Roselyne Chery-Cyrille |
| **Temp** | | |
| 98.8 | 09/08/2015 07:02:07 PM | Roselyne Chery-Cyrille |
| **SaO2** | | |
| 98 | 09/08/2015 07:02:07 PM | Roselyne Chery-Cyrille |

## Past Orders

CBC w/o DIFF (HEMOGRAM)/PLAT. CT (Order Date - 03/14/2015) (Collection Date - 03/14/2015)

Result: Abnormal

| | | |
|---|---|---|
| HCT | 37.5 | 39.3-52.5 - % L |
| WBC | 5.53 | 3.40-11.80 - x10 (3)/uL |
| RBC | 4.21 | 4.20-5.90 - x10 (6)/uL |
| HGB | 12.7 | 12.3-17.0 - gm/dL |
| MCHC | 33.9 | 29.0-35.0 - gm/dL |
| MCV | 89.1 | 80.0-100.0 - fL |
| MCH | 30.2 | 25.0-34.1 - pg |
| RDW | 14.7 | 10.9-16.9 - % |

Notes: Gripper,DAndra , PCA 3/14/2015 1:33:25 PM > . Toussaint,Anook , PA 3/15/2015 2:09:27 AM > Not clinically significant

## Examination

General Examination:
GENERAL APPEARANCE: well-appearing, well-developed, well-hydrated, well-nourished, no acute distress.
HEENT: **HEAD:-**, normocephalic, atraumatic, no scalp lesions, **EYES:-**, PERRLA, EOMI, no nystagmus, **NOSE:-**, normal pink mucosa, **THROAT:-**, clear, no erythema or exudate.
ORAL CAVITY: normal, clear, unremarkable.

---

**Patient: JONES, ROBERT   DOB: 01/11/1964   Progress Note: Roselyne Chery-Cyrille, MD   09/08/2015** ←
_Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)_

**DEF 1824**

https://chsricbpdlb.riepf.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterID...   6/2/2016

# EXHIBIT "R"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT JONES,

Plaintiff,

v.

MICHAEL BLOOMBERG ET AL.,

Defendants.

Civil Case No. 1:14-cv-06402-KPF

**PLAINTIFF'S BRIEF IN SUPPORT OF APPLYING THE HEIGHTENED STANDARD OF PLEADING UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a)—AS ARTICULATED IN *TWOMBLY* AND *IQBAL*—TO AFFIRMATIVE DEFENSES**

Richard F. Lawler, Esq.
Jessica Greer Griffith, Esq.
WINSTON & STRAWN
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6609
Fax: (212) 294-4700

*Attorneys for Plaintiff Robert Jones*

1

## I.   **INTRODUCTION**

In this action, plaintiff Robert Jones ("Jones") asserts claims of constitutional rights and civil rights violations, including allegations of inadequate health care, illegal search and seizure, and improper collection and use of "genetic material" (DNA). Defendants filed answers and pled eleven boilerplate affirmative defenses. Defendants' asserted boilerplate affirmative defenses are conclusory, devoid of any meaningful factual allegations, and fail to provide fair notice to plaintiff of the defenses asserted. Plaintiff subsequently filed a *pro se* motion to strike affirmative defenses from the defendants' answers, and the defendants filed a response in opposition to plaintiff's motion.

The Court, recognizing a split of authority among district courts about whether the standard for pleadings under Federal Rule of Civil Procedure 8(a)—as articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—also applies to affirmative defenses, subsequently ordered the parties to submit additional briefs addressing this issue.

Although neither the Supreme Court nor any of the federal circuit courts have ruled on this issue to date,[1] many lower courts, including courts in the Second Circuit, have applied the *Twombly/Iqbal* heightened pleading standard to affirmative defenses after considering pleading requirements in the Federal Rules of Civil Procedure, case law, and policy considerations. In the context of this case, taking into account the large number of boilerplate affirmative defenses lacking factual specificity, the rationale for applying this standard would be especially appropriate.

---

[1] *See S.E.C. v. Caledonian Bank Ltd.*, 2015 WL 6971535, at *12 (S.D.N.Y. Nov. 10, 2015) ("At the moment, courts disagree on whether affirmative defenses [] must be "plausibly" pled in an answer, like the claims in a complaint."); *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1256 (D. Kan. 2011) ("No appellate court has decided this issue, and district courts are split.").

II.     **ARGUMENT: THE HEIGHTENED PLEADING STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a)—AS ARTICULATED IN *TWOMBLY* AND *IQBAL*—SHOULD APPLY TO AFFIRMATIVE DEFENSES**

Affirmative defenses are pleadings and should consequently be struck from an answer when they are insufficiently pled. Although the Supreme Court did not explicitly state that affirmative defenses are subject to the *Twombly/Iqbal* plausibility standard, the Supreme Court also did not choose to expressly preclude the application of this heightened pleading standard to affirmative defenses. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Twombly/Iqbal* heightened pleading standard requires pleadings to be accompanied with some factual context to provide an opposing party with a basis for the pleading. A heightened pleading standard is especially appropriate here as defendants' boilerplate affirmative defenses would force plaintiff to conduct discovery without any guidance as to the parameters of and the basis for the defendants' affirmative defense pleadings.

### A.  Legal Standards for Evaluating Pleadings

Federal Rule of Civil Procedure 8 governs pleadings, including responsive pleadings. Federal Rule of Civil Procedure Rule 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(b)(1)(A), applicable to defensive pleadings, provides, "In responding to a pleading, a party must...state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Rule 8(c) adds that defendants must "affirmatively state any avoidance or affirmative defense" in response to a pleading. Fed. R. Civ. P. 8(c).

The U.S. Supreme Court heightened the pleading requirements for stating a claim in *Twombly* and *Iqbal* by increasing the specificity with which claims had to be pled to require a

3

complaint to contain enough facts to give rise to a plausible claim to relief. The Supreme Court used to employ the "notice pleading" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957), to determine whether claims for relief and affirmative defense pleadings were sufficient. In *Conley*, the Supreme Court provided that a pleading need only include "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47. The Supreme Court explained, "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his [or her] claim which would entitle him [or her] to relief." *Id.* at 45-46.

The *Twombly/Iqbal* heightened pleading standard superseded the *Conley* "no set of facts" language as the standard to be used for evaluating pleadings and deciding motions to dismiss for failure to state a claim. In *Twombly*, the Supreme Court evaluated the proper pleading standard for federal claims and adopted a plausibility requirement, which was further clarified in *Iqbal*. *Twombly*, 550 U.S. at 570. When determining the sufficiency of a pleading, a court should examine whether pleadings contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and not merely conceivable. *Iqbal*, 556 U.S. at 678. This pleading standard does not require "detailed factual allegations," but a pleading is considered insufficient if it simply provides "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). The Supreme Court explained, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

4

The Supreme Court clarified, in *Iqbal*, that the heightened pleading standard should apply to all civil cases and not just to antitrust cases. *Id.* at 684.

**B.   *Twombly/Iqbal* Heightened Pleading Standard Applies to Affirmative Defenses**

Rule 12(f) provides that upon a "motion made by a party…within 20 days after being served with the pleading…[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Historically, courts have applied similar standards in evaluating Rule 12(b)(6) motions to dismiss and Rule 12(f) motions to strike. *See, e.g., Credit Suisse First Boston, LLC v. Intershop Communications AG*, 407 F. Supp. 2d 541, 546 (S.D.N.Y. 2006) ("The standard by which 12(f) and 12(b)(6) motions are evaluated are 'mirror images'"). It would be a major change from this practice to now—post *Twombly* and *Iqbal*—use different standards to assess 12(b)(6) and 12(f) motions.

Since *Twombly* and *Iqbal*, numerous courts have applied the heightened pleading standard enumerated in *Twombly* and *Iqbal* to the pleading of affirmative defenses. Judge Swain, in *E.E.O.C. v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011), commented, "Most lower courts that have considered the question of the standard applicable to pleading of defenses have held that the Rule 12(b)(6) standard, as elucidated in *Twombly* and *Iqbal*, governs the sufficiency of the pleading of affirmative defenses." Although not all decisions in the Southern District of New York and the rest of the country have uniformly applied the *Twombly/Iqbal* heightened pleading standard to affirmative defenses, many lower courts, including courts in this district, have done so. *See Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F.Supp.2d 620 (S.D.N.Y. 2008) (Chin, J.); *E.E.O.C. v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) (Swain, J.) ("It has long been held that affirmative defenses that contain only 'bald assertions' without supporting facts should

5

be stricken"); *Tracy v. NVR, Inc.*, 2009 WL 3153150, at *7 (W.D.N.Y. Sept. 30, 2009) *report and recommendation adopted as modified*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009); *Safeco Insurance Co. v. O'Hara Corporation*, 2008 WL 2558015 (E.D. Mich. June 25, 2008); *Shinew v. Wszola*, No. 08-14256, 2009 WL 1076279, at *2-5 (E.D. Mich. Apr. 21, 2009); *In re Mission Bay Ski & Bike, Inc.*, 2009 WL 2913438, at *6 (Bankr. N.D.Ill. Sept. 9, 2009); *Torres v. TPUSA, Inc.*, No. 08-618, 2009 WL 764466, at *1 (M.D. Fla. Mar. 19, 2009); and *United States v. Quadrini*, 2007 WL 4303213, at *4 (E.D. Mich.) ("Like the plaintiff, a defendant must also plead sufficient facts to demonstrate a plausible affirmative defense, or one that has a 'reasonably founded hope' of success."). *But see Tardif v. City of New York*, 302 F.R.D. 31 (S.D.N.Y. 2014) (Wood, J.) (recognizing the split in cases and concluding the heightened pleading standard does not apply to affirmative defenses) and cases cited therein.

In *Aspex Eyewear*, 531 F.Supp.2d at 620, the plaintiffs moved to strike certain affirmative defenses in accordance with Rule 12(f) as insufficient since they were not supported by facts which would provide notice to the plaintiffs of the defenses asserted against them. In evaluating this motion, Judge Chin determined, "The standard on a motion to dismiss also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) and a motion to strike an affirmative defense pursuant to Rule 12(f)." *Id.* at 622. The court granted plaintiffs' motion to strike certain affirmative defenses finding that the affirmative defenses of collateral estoppel and/or res judicata, equitable estoppel, and patent misuse and/or unclean hands failed "to meet the minimal requirements of notice pleading under Fed.R.Civ.P. 8(a)." *Id.* at 623. The court described the affirmative defenses as insufficiently pled under Rule 8(a)'s pleading standard because the defendant asserted no facts, failed to refer to the elements of the various affirmative

defenses, and were not sufficient to provide plaintiffs notice of the defenses since they were "mere conclusory assertions." *Id.*

In *Tracy*, 2009 WL 3153150, at *7, the plaintiff filed a motion to strike several of the defendant's affirmative defenses alleging they were factually insufficient and failed to satisfy the Rule 8 pleading standard. In granting this motion, the court determined that the "*Twombly* plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f)." *Id.* at *7. The court ordered these affirmative defenses stricken since they were pled in "simple conclusory terms, unsupported by any factual allegations" and were "plainly deficient under the *Iqbal* standard." *Id.* at *8.

## C. Parallels between 8(a) and Rule 8(b)

The pleading requirements for affirmative defenses should be the same as the pleading requirements for claims since Rule 8(a)(2) and Rule 8(b) both require pleadings to contain "short and plain" supporting statements. Under Fed. R. Civ. P. 8(a)(2), which applies to complaints, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 8(b), which applies to defenses, a party responding to a pleading must "state in short and plain terms its defenses to each claim asserted against it." The similarity of these rules governing pleadings has caused many courts to conclude the standard for claims for relief pleadings should also be used to assess affirmative defense pleadings. *See Aspex Eyewear*, 531 F.Supp.2d at 623 ("The Second Circuit has likewise held that '[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.' *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir.1996) (quoting *Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 155 F.R.D. 631, 634 (E.D.Wis.1994) (affirmative defenses are pleadings, and therefore, are subject to all pleading

requirements of the Federal Rules of Civil Procedure).") (internal quotations omitted). *See also Malibu Media, LLC v. Doe*, 2013 WL 4048513, at *1 (N.D. Ind. 2013) ("An affirmative defense is a pleading subject to Rule 8(a), and therefore must include a short and plain statement of the defense."); *Katz v. Chevaldina*, 2013 WL 2147156, at *3 (S.D. Fla. May 15, 2013) ("Although an affirmative defense 'does not need detailed factual allegations, [it] requires more than labels and conclusions.'" *Mid–Continent Cas.*, 765 F.Supp.2d at 1361 (quoting *Twombly*, 550 U.S. at 555)); and *United States v. Brink*, 2011 WL 835828, at *3 (S.D. Tex. Mar. 4, 2011) ("[T]his Court will also apply the plausibility standard articulated in *Twombly* and *Iqbal* in assessing the sufficiency of affirmative defenses.").

It is not meaningful that the language in Rule 8(b) and 8(c) is not exactly the same as the language in Rule 8(a)(2) since Rule 8(b)(1), which has the sub-heading "Defenses; In General," requires pleadings, similar to Rule 8(a)(2), to be "short and plain." *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009). The *Hayne* court explained:

> In both instances [claims and affirmative defenses], the purpose of pleading requirements is to provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of possibility that it may apply to the case. Moreover, Fed. R. Civ. P. 8 is consistent in at least inferring that the pleading requirements for affirmative defenses are essentially the same as for claims for relief. Although Rule 8(c) for affirmative defenses does not contain the same language as 8(a)(2), requiring "a short and plain statement of the claim," 8(b)(1)(A) nevertheless does require a defendant to "state in short and plain terms its defenses to each claim." The sub-heading for Rule 8(b)(1), moreover, is "Defenses; In General." Rule 8(c)(1) provides a helpful laundry list of commonly asserted affirmative defenses to emphasize that avoidances and affirmative defenses must indeed be pleaded to be preserved. Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply.

263 F.R.D. 650. *See also HCRI TRS Acquirer, LLC v. Iwer*, 708 F.Supp.2d 687, 691 (N.D. Tex. 2013) ("While the language in Civil Rule 8(a) differs from the language in

Civil Rules (b) and (c), this difference is minimal and simply reflects that an answer is a response to a complaint. Furthermore, the shared use of the 'short and plain' language – the essence of the pleading standard—indicates the pleading requirements for affirmative defenses are the same as for claims of relief.")

### D. Defendants Can Amend Their Answer

The argument that the heightened pleading standard should not apply to affirmative defenses because defendants have a more limited time to file their answers (21 days) than plaintiffs have to prepare their complaint (only limited by the statute of limitations) is not persuasive in this instance since Rule 15 instructs the court to "freely give leave" to defendants, after additional facts become available, to amend their answer. Fed. R. Civ. P. 15. *See Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) ("To the extent that this order prevents the defendant from alleging affirmative defenses as to the unknown putative class members because there are no facts that could show that an affirmative defense is plausibly applicable to Barnes, the court will grant leave to the defendant to amend its answer at such time as the defendant becomes aware of facts tending to show the plausibility of additional affirmative defenses pertaining to class members, provided that defendant exercises diligence in determining such facts."). In addition, defendants' limited time to file an answer is often not particularly burdensome since defendants are frequently able to easily access information required to support affirmative defenses, such as statute of limitations information.

### E. The Purposes Underlying the *Twombly/Iqbal* Heightened Pleading Standard Apply to Affirmative Defenses

Problems created by insufficient pleadings occur regardless of whether such pleadings are asserted in a complaint or in the form of affirmative defenses. Policy considerations of

efficiency, cost reduction, and fair notice to the parties support extending the *Twombly/Iqbal* plausibility standard to affirmative defenses.

In both *Twombly* and *Iqbal*, the Supreme Court discussed its concern that unnecessary litigation wastes a significant amount of time and money, as well as strains judicial resources. *See Twombly*, 550 U.S. at 558-559 (explaining that only by "taking care" to require allegations to reach a certain level "can [we] hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the discovery process will reveal relevant evidence'"); *Iqbal*, 556 U.S. at 685, 698-99. Frivolous affirmative defenses, like frivolous pleadings in a complaint, result in unnecessary discovery and increased litigation costs, as well as add unnecessarily clutter to a court's docket. *See, e.g., Safeco*, 2008 WL 2558015 at *1 ("Boilerplate defenses clutter the docket and, further, create unnecessary work. Opposing counsel generally must respond to such defenses with interrogatories or other discovery aimed at ascertaining which defenses are truly at issue and which are merely asserted without factual basis but in an abundance of caution."). By using the plausibility standard to evaluate affirmative defenses, "a plaintiff will not be left to the formal discovery process to find-out whether the defense exists and may, instead, use the discovery process for its intended purpose of ascertaining the additional facts which support a well-pleaded claim or defense." *Palmer v. Oakland Farms*, 2010 WL 2605179, at *4 (W.D.Va. June 24, 2010). Extending the plausibility standard to affirmative defenses would thus address the same policy goals of encouraging efficiency and reducing costs as it does when applied to complaint pleadings.

Other policy concerns which support applying the standard for pleadings under Rule 8(a) to affirmative defenses are fairness and equity. A defendant's affirmative defenses should be held to the same standard as plaintiff's complaint allegations. Affirmative defense pleadings in

an answer are similar to pleadings in a plaintiff's complaint since both pleadings provide the first opportunity for one party to notify the other party of claims or defenses which will be asserted. The heightened pleading standard in *Twombly* and *Iqbal*, in fairness to the defendant, requires a plaintiff to state enough facts to give rise to a plausible claim and to provide a defendant with "fair notice" of the allegations against her. *See Twombly*, 550 U.S. at 555. This pleading standard should similarly apply to affirmative defenses so that a plaintiff, and not only a defendant, receives "fair notice" and the sufficient factual context of the basis of a claim or defense. As aptly stated by the District Court of the Eastern District of Virginia, "'the considerations of fairness, common sense, and litigation efficiency" dictate that litigants articulate complaints and affirmative defenses according to the same pleading standards." *Francisco v. Verizon S., Inc.*, 2010 WL 2990159, at *7 (E.D. Va. July 29, 2010).

## III.   CONCLUSION

For the foregoing reasons, the Court should find the standard for pleadings under Federal Rule of Civil Procedure 8(a) —as articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—applies to affirmative defenses.

Dated: January 28, 2016

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/ Jessica Greer Griffith
Jessica Greer Griffith
Richard F. Lawler
200 Park Avenue
New York, New York 10166
Telephone: 212-294-6609
Facsimile: 212-294-4700
jgriffith@winston.com
rlawler@winston.com
*Attorneys for Plaintiff Robert Jones*

## CERTIFICATE OF SERVICE

I, Jessica Greer Griffith, hereby certify that a true and correct copy of the foregoing

Plaintiff's Brief was served by FedEx overnight delivery on January 28, 2016 upon the following

Plaintiff *pro se*, and by operation of the Court's Electronic Case Filing system upon counsel of

record.

Robert Jones
#141-15-02468
Otis Bantum Corr. Center
1600 Hazen Street
E. Elmhurst, NY 11370

Dated: January 28, 2016                                   /s/ Jessica Greer Griffith
                                                             Jessica Greer Griffith

12

# EXHIBIT "S"

UNITED SATTES DISTIRCT COURT
SOUNTHERN DISTRICT OF NEW YORK _____ X

Robert Jones,          Plaintiff                    :

                                                    :        CIVIL COMPLAINT
                                                             42 U.S.C. § 1983
                                                    :        _____cv_____,
                                                             TRIAL BY JURY DEMENDED
                                                    :

            -AGAINST-                               :

MICHAEL BLOOMBERG, FORMER CITY OF NEW YORK,        :

COUNTY EXECUTIVE "MAYOR"; CYRUS VANCE, CITY OF     :

NEW YORK, DISTRICT ATTORNEY OFFICE, LAUREN PERRY,  :

ASSISTANT DISTIRCT ATTORNEY, RAYMOND KELLY, FORMER :

CITY OF NEW YORK, POLICE COMMISSIONER, "NYPD", POLICE :

DETECTIVES JAMES MEEHAN, SHIELD # 6445, JOSE CRIOLLO :

SHIELD # 4076, ADAM SAGER TAX No. 902338, THORNTON :

GREGORY TAX No. 919777, POLICE LIEUTENANT FELIX RIVERA :

TAX No. 920765, POLICE OFFICER M.KOLAND SHILED # 28952, :

MANHATTAN MID-TOWN NORTH Pct, JONH DOE SHIELD #    :

PROPERTY CLERKS OFFICE, ONE  POLICE PLAZA,

CITY OF NEW YORK MUNICIPAL CORPORATION "PERSON".   :

 IN THEIR OFFICIAL AND PERSONAL CAPCAITY           :

                                                    :

              DEFENDANTS                            :
_____X

Plaintiff Robert Jones, Pro-Se for his complaint allege as follows:

## NATURE OF ACTION

1).     This is an action to recover money damages arising out of Defendants

Michael Bloomberg, Cyrus Vance, Lauren Perry, Raymond Kelly, James Meehan # 6445,

Jose Criollo # 4076, Adam Sager Tax No. 902338, Felix Rivera LT Tax No. 920765,

Thornton Gregory Tax No. 919777, P.O. M. Koland  # 28952, of the Manhattan Mid-town

Detective Squad, Police Officer John Doc #_____, 1 Police Plaza.

PRO SE OFFICE

AUG 4

avenue apartment building and later exited carrying a bag that the plaintiff was not carrying upon entering pursuant to felony complaint of ADA Perry ECAB # 1306957.

8) On January 25, 2012, according to information of belief Detective James Meehan shield # 6445 of the Midtown North and South Detective Squad is reported to have the above date while investigating a burglary, which occurred on 12/26/2011.

9) At approximately 7:30 pm 616 9th Avenue Manhattan, New York, despondent Thomas Dziarmaga informs detective Jose Criollo shield # 4076 and Detective James Meehan shield # 6445 that he arrived at his home and found his front door open and computer and other items were missing.

10) In the course of this investigation, Detective James Meehan shield # 6445 without probable cause arrived at and entered the home of Robert Jones 571 Glenmore Avenue in the East New York Section of Brooklyn.

11) Did without consent from the plaintiff nor search warrant, or probable cause, entered the location of 571 Glenmore Avenue, and proceeded to walk up one flight upstairs, peered into the plaintiff's bedroom unannounced and observed Mr. Jones operating alleged stolen laptop computer "Mac Book Pro" which belonged to Thomas Dziarmaga.

12) Detective Meehan Shield # 6445 is alleged to have made this discovery by way of "GPS" electronic tracking device as an added feature built within the computers mainframe.

13) On January 26th Detective James Meehan Shield # 6445 is alleged to have sought and was granted a search warrant # 095-2012 authorized by Supreme Court Judge Armstrong, said search warrant did not describe the want of "DNA" testing nor any eye witness testimony by Detective James Meehan Shield # 6445 that he on December 26, 2011, observed the plaintiff at the fore mention location 616 9th Avenue.

was used to link him to a burglary on January 11, 2012, by testing of a hat found at the scene located at 304 -306 West 54th Street ) during the interrogation plaintiff stated to Detectives Meehan and Criollo that "I'm off my medication is that the reason for all this", after which plaintiff was charged with (8 counts of Burglary in the Second Degree and Nine Counts of Criminal Possession of Stolen Property in the Fifth).

20) Plaintiff was subsequently transported to area Hospital "Bellevue" after numerous complaints of needed mental health and chronic pain medications. In addition, Lieutenant Felix Rivera Tax No. 920765 of the Midtown North command ordered Police Officer M. Koland shield #28952, at the direction of Raymond Kelly Police Commissioner to transport plaintiff to the Area Hospital.

21) Police Lieutenant Felix Rivera Tax No. 920765 is reported to have directed Police Officer M. Koland Shield # 28952 "You Confiscate those Crutches you don't come back" alleging they were needed to secure their case against the plaintiff.

22) Upon entering the Bellevue Hospital Emergency room plaintiff met with and was evaluated by Nurse Practitioner Czarnecki NP, whom after viewing ambulatory medical records held by orthopedic implant clinic dated October 19, 1999, indentifying a consolation and request for evaluation and surgery right knee, left hip/femur.

23) Nurse Practitioner Czarnecki did witness Police Officer M. Koland # 28952 confiscate the plaintiff's crutches and later the implant clinic ordered a second pair of crutches for the purpose of plaintiff's mobility. Under MR# 167212.

24) Plaintiff was provided with pain medication and mental health medication Prozac 80 mg, Ateracs 100mg, after which he was transported by Police vehicle to the area Correctional facility Manhattan Detention Complex "MDC".

30). Plaintiff maintains that defendants in the matter of Jones v. City New York, 14 –cv-_____ (   )(   ). Only after the filing of this civil action 42 U.S.C. § 1983. Did the Defendants City of New York "Corizon" Physicians Health Care" "PHS" issued new Medication To address his chronic kidney disease namely 1. Simvastain 20mgs, 2. Metoprolal 100mgs, 3. Enalapril Maleate 10mgs.

## PARTIES

31). Plaintiff Robert Jones, was at all times relevant herein a Citizen of the United States and a resident of the State of New York, he is an African American 50 years of age At the time of the incident he occupied the dwelling of 571 Glen More Ave in the East New York section of Brooklyn New York.

32). Defendant Michael Bloomberg, was at all time relevant herein former" Mayor" For the City of New York, Municipal Corporation "Person" in that capacity he was the chief Executive Officer and Policy maker over the City of New York, City of New York, Police Department "NYPD" and City of New York, District Attorneys Officer.

33). Defendant Cyrus Vance, was at all times relevant herein, District Attorney For the County of New York, in that capacity he is the chief executive officer for the City of New York Criminal Justice System in that borough.

34). Defendant Lauren Perry, was at all times relevant herein Assistant District Attorney for the County of New York, in that capacity she is the Assistant to the Chief Executive Officer "Cyrus Vance" Criminal Justice System in that borough.

35). Defendant Raymond Kelly, was at all times relevant herein former Commissioner For the City of New York, Police Department "NYPD" in that capacity he was the chief Executive Officer and Policy Maker responsible for the day to day operations of the "NYPD".

Squad, that capacity he was the assistant chief investigations officer responsible for the

Search and Seizure of Mr. Jones Person, Papers, and Effects. In the Matter of People v. Jones

Indictment No. 480/2012.

41).    Defendant M. Koland shield # 28952, was at all time relevant herein Police Officer

For the City of New York, Police Department "NYPD" Manhattans Mid-town North Prescient

In that capacity he was a patrolman and escort officer who escorted plaintiff to area

Bellevue Hospital, and Manhattan Detention Center "MDC" Correctional Facility.

42).    Defendant John Doe shield #_____, was at all times relevant herein, Police

Officer for the City of New York, Police Department "NYPD" in that capacity he was the One

Police Plaza Property Clerk responsible for the timely storage and handling of all Police

vouch-red  evidence under No. 100016265, PET No. 130051018.et al.

## Jurisdiction

43).    Plaintiff seeks the Jurisdiction of this Court Southern District of New York, pursuant

To  title 28 U.S.C. § 1331 and 1332 (a) as the matter in controversy exceeds the sum of  One Million

Dollars.

44).    Pendent Jurisdiction is predicated upon title 28 U.S.C. § 1343 (3) this Court has

Subject matter Jurisdiction over plaintiff  State Law Claim.

### VENUE

45).    Venue is proper pursuant to title 28 U.S.C. § 1391 (b) with the Southern District of New

York, because it is the Judicial District where all defendant resides and it is the place of the

employment  as the district giving rise to the events allege by this complaint 42 U.S.C. § 1983.

50). Defendants City of New York, ET, al. Bloomberg, Vance, Perry, Kelly, Rivera, Meehan Criollo, sager, Thornton, Koland, and John Doe, by and through their actions or inactions Did while under the color of State Law.

51). did with a knowing and willful intent to delay, obstruct, and deprive plaintiff of His constitutionally protected interest guaranteed under the Fourth Amendment as a Created right to be free from illegal search and seizure, without probable cause to arrest As a pre-requisite to Procedural Unlawful Detention, Procedural Due Process of Law, Resulting with Malicious Prosecution, and Unlawful Imprisonment.

52). Plaintiff during all times relevant herein was illegally deprived of his Due Process Rights as it relates to wrongful confiscation of plaintiff genetic martial "DNA" not Abandoned while held in police custody collected during an unlawful and illegal Interrogation on the date of arrest in violation of Executive Law § 995-d.

53). Defendants Police Officers James Meehan #6445, Jose Criollo # 4076, and other Members of the Manhattan Mid-town North Detective Squad did without written consent Court Order, or Probable Cause collected plaintiffs "DNA" which was not reflective in their Search Warrant # 095-2012, issued by Supreme Court Judge Armstrong on 1/26/2012.

54). whereby said search warrant # 095-2012. Did not describe want of saliva sample For the purpose of "DNA" testing nor, dose it identify Detective James Meehan # 6445, as An eyewitness to the events allege on 12/26/2011. As it relates to a Burglary occurring At the location of 616 west 54th street, complaintant witness Thomas Dziarmaga.

55). According to information and belief the same "DNA" collected by Detectives Meehan and Criollo on date of Arrest 1/27/2012. From as drinking cup was subsequently Use in an unsolved Burglary other than the events allege on 1/11/2012. At the location of 304/306 west 54th Street for which a "Hat" was recovered at the crime scene and later Used in the prosecution of People v. Jones indictment # 480/2012.

Proceeding by way of "Cold Case"

63). Molineux Exception inter alia of intent and are not applicable in this matter uncharged crimes

Evidence is not permitted to negate a defense of consent, as there is "NO" possible use of

Information discovered by "Cold hit" under Molineux.

## FACTS
## MALICIOUS PROSECUTION INITIATION OF PROCEEDINGS

64). the offenses were alleging to have been committed under the following circumstances:

Deponent states that deponent is informed by Detective James Meehan shield # 6445 of the

Mid-town South Detectives Squad, that on December 26, 2011. At approximately 7:30pm inside

65). of the building at 616 9th Avenue, Detective Meehan observed the defendant enter the

Apartment Building and later exit the apartment building a short time later carrying a bag that the

Individual was not carrying upon entering.

66). informant Thomas Dziarmaga of 616 9th Avenue further informs Detective Meehan

Known to the District Attorney's Office Cyrus Vance, that informant Dziarmaga is the resident at

The above building, that he upon returning to his home found hid front door was open and a

Computer and other property were missing.

### FIRST ELEMENT

67). Malicious Prosecution is alleged herein that on December 26, 2011. Detective James Meehan

Shield # 6445 with assistants of Detective Jose Criollo shield # 4076 of the Mid-town North

Detective Squad as second responder was eyewitness to the crime charge Burglary as stated

In the Assistant District Attorneys Laruen Perry felony complaint ECAB# 1306957 and Arresting

Officers Information PF3/PF15-Return, PF11/PF23- Change Access. See exhibit "A" and "B"

### SECOND ELEMENT

68). Detective James Meehan shield # 6445, Jose Criollo shield # 4076, Adam Sager Tax No

9023338, Thornton Gregory Tax No. 919777 and other members of the Mid-town North Detectives

Squad are allege to have conducted an investigation into numerous Burglaries in the County of

74). And ordered plaintiff to show me your hands, then directed him to produce some

Identification, for which plaintiff complied upon inquire as to what happen detective John Doe,

States after reusing said ID card, Mr. Jones why are you on crutches, plaintiff stated I have a

Injuries of the right knee, left hip/femur, lumbar spine sciatica.

75). Detective John Doe further questioned the plaintiff and asked, "Have You Been Arrested"

Plaintiff replied "Yes" at which time Detective John Doe quickly wrote down Mr. Jones home

Address "571 Glenmore Ave in the East New York, section of Brooklyn".

76). According to information and belief Detective John Doe of the 77th Precinct, did without

Any corroborating information, nor any reason to belief plaintiff was engaged in any criminal

Behavior or committed any form of crime.

77). It was at this time and all other times relevant herein that Detective John Doe having some

Undisclosed information of motive made a phone call to the Manhattan Mid-town North Detective

Squad and relied plaintiffs home address to Detective James Meehan # 6445, and or Jose Criollo

# 4076. Or some other member of the Mid-town North Pct on January 26,2012. Between 5:00am

And 6:00am.

78). On January 27, 2012. At approximately 3:30pm in the morning of that day armed with

The non-corroborated information provided by Detective John Doe of the 77th Pct, arrived at

The home of the plaintiff "571Glenmore Ave" headed by Detective James Meehan # 6445, Jose

Criollo # 4076, Adam Sager Tax No. 902338, Thornton Gregory Tax No. 919777. Et al, et seq.

Entered the location and placed the Mr. Jones under arrest.

79). Defendants James Meehan # 6445, Jose Criollo # 4076, Adam Sager Tax No. 902338 and

Thornton Gregory Tax No. 919777, are alleged to have restricted plaintiffs freedom of movement,

85).    Plaintiff maintains that this tactic of water deprivation employed by defendants Meehan, Criollo,

Sager Gregory, et al was designed solely for the purpose of cohered speedy confession, and cohered

Unethical Practice of law by collecting "DNA" sample while circumventing the standard collection

Procedure owned by the Unified Court Systems "UCS" responsible for collection and preservation of

"DNA" evidence collected as crime scene evidence.

86).    And the Criminal Justice Services "CJS" responsible for analysis and testing of "DNA"

Evidence both of which were systematically abridged by defendants Detective Meehan, Criollo, Sager,

Gregory. Et al, et seq. protected under exculpatory evidence within the Brady.

### AS AND FOR THE FIRST CAUSE OF ACTION
### AGAINST DEFENDANTS, BLOOMGER, VANCE, KELLY, PERRY,
### MEEHAN, CRIOLLO, SAGER, GREGORY, RIVERA, KOLAND, JOHN DOE
### PROBPERTY CLERK

87).    Plaintiff Robert Jones, allege the allegation contained in ¶¶ 1-10,10-20,20-30,30-40,

40-50,50-60,60-70,70-80,80-85, 85-86 and 87 as are more fully set forth herein.


        Whereby from January 25, 2012. Through January 27, 2012. And from January 27,

2012. through November 21, 2012. Defendants Bloomberg, Vance, Kelly, Perry, Meehan, Crillo,

Sager, Gregory, Rivera, Koland, John Doe Property Clerk, did during all times relevant in the

Malicious prosecution of plaintiff Robert Jones indictment # 480/2012.

88).    Both Jointly and severally while acting under the color of state law, were in violation of the

Forgoing Statutory and Regulatory Provisions of Federal Law, pursuant to title 18 U.S.C. § 241,

Under "Conspiracy" title 18 U.S.C. § 242 "Deprivation of Rights under State Law" title 18 U.S.C. §

1981 "Deprivation of Equal Rights".

89).    Title 42 U.S.C. § 1983 "Civil Right Act" title 42 U.S.C. § 1985 "Conspiracy to Interfere with

Citizens Civil Right"

Being eyewitness to the events allege on 12/26/2011. At the home of Thomas Dziarmaga

For which felony compliant ECAB # 1306957 identifies both Detective observing the

Plaintiff enter the location of 616 9th Ave, and later exits the building in possession of

A bag containing said computer "Mac Book Pro"

95).    Also noticeable absent in said Search Warrant # 095/ 2012. Was the description

In addition, want of "DNA" sample used for matching the sample illegally collected

By Detective James Meehan # 6445, Jose Criollo # 4076, Adam Sager Tax No. 902338,

Thornton Gregory Tax # 919777 from a drinking cup while under police interrogation

With any and all unsolved Burglaries.

96).    Nor does the aforementioned Search Warrant # 095/2012 identify the need to

Confiscate numerous other items and personal effects belonging to the plaintiff including

Clothing, Hats, Pants, Jackets, shirts, Medical Records, Mental Health Records, legal

Documents, Mothers Funeral Eulogy, and a pair of crutches all vouched under invoice

# 1000126265. PET No. 130051018.

97).    In violation of plaintiff Fourth Amendment right to be free from illegal Search and

Seizure, Cruel and Unusual Punishment in violation of plaintiffs Eighth Amendment,

Unauthorized dissemination of "DNA" saliva taken from a drinking cup used to link

Plaintiff to an unsolved crime in the matter of People V. Jones indictment # 4939/2013.

Prohibited under Executive Law § 995-a,b,c,d, and f.

Used in the unethical and unconstitutional practice of law deriving from unauthorized

Collection and comparison of the plaintiffs "DNA" without consent of the donor while

Unlawfully in police detention, Later to be used to link plaintiff to an uncharged crime.

In the matter of People v. Jones indictment # 4939/2013.

104).    Defendants are reported to have collected Plaintiffs "DNA" from a drinking cup

Said sample was subsequently use in the prosecution of the initial offense as held in the

Matter of People v. Jones Indictment No. 480/2012.

105).    According to police reports and documents On December 26, 2011. The plaintiff

Was accused of the offense of Burglary accruing at 616 9th Ave, County of New York,

During which a "Knife" was found at the home of Thomas Dizarmaga allege to have

Belonged to the suspect, Police Detectives James Meehan # 6445, and Jose Criollo # 4076,

106).    Are reported to have witnessed the allege Burglary and also collected said

"DNA" evidence from the "knife" found at the scene, collection and analysis reports

Issued by the Office of Chief Medical Examiners were inconclusive.

107).    According to police reports and documents On January 11, 2012. The plaintiff

Was accused of the offense of Burglary accruing at 304/306 west 54th street, County of

New York, during which a "Hat" was found at the scene, Detective James Meehan # 6445,

Jose Criollo # 4076, Adam Sager Tax No. 902338, Thornton Gregory Tax No. 919777,

Are reported to have been issued a copy of the Office of Chief Medical Examiners report

Which was also inconclusive?

Appears to be national policy to prohibit the comparison of "DNA" identification information obtained from non-convicted person with crime scene "DNA" of unsolved Crimes. Plaintiffs "DNA" was "Not" effectively stored on file from 1/27/2012-12/30/2013

113).    And 42 U.S.C. § 14132 (c) for which any government official violation the federal Statue In this area is committing a Crime.

114).    Plaintiff maintains his "DNA" profile, sample, or index was not added to the Office of Chief Medical Examiners "OCME" data bank or any linkage systems until December 30, 2013. Prior to this date no "DNA" sample was documented, collected alternatively, stored.

115).    Defendants were clearly in violation of plaintiffs rights to protect his genetic Martial when it filed request for discovery pursuant to N.Y. Crim. Proc. Law § 240.40 (2)(b)(v). Which was to provide discovery for a pending case " People v. Jones indictment #480/2012" not to permit the People to investigate unsolved crimes for which they have no reason to suspect plaintiff.

116).    People have violated clearly established constitutional restrictions under the Fourth and Fifth Amendment which requires probable cause before a person's Silvia, Blood, skin cells, hair, and bodily fluids may be extracted for "DNA" testing under the guise Of seeking discover. "Matter of People v. Jones indictment # 4939/2013."

117).    Plaintiff seeks his fourth amendment right to recover the Jacket in the above Penning criminal matter "Indictment #4939/2013." As his exclusive property right left at the crime scene which includes all "DNA" collected by police.

118).    The United State Supreme Court has rejected the idea that there is an absence of reasonable expectation of privacy in martial left at a crime scene, a crime scene can be A person's home, or locations where a citizen has expectation of privacy of martial left At those crime scenes and are not necessarily abandoned.

124).     Which provides : A warrant of arrest must be subscribed by the issuing Judge in

Addition must State or Contain A). the name of the issuing Court. B). The date of issuance of

The warrant C). the name of the defendant to be arrested or, a reasonable description provided

By eyewitness in this case "Detective James Meehan shield # 6445" "pursuant to Felony

Complaint ECAB # 1306957.

125).     D). The police officer or officers appointed by the state to which the warrant is

Addressed and  E). A direction the such officer arrest the defendant and bring him before the

issuing  Court "Judge Armstrong"" Warrant # 095/2012" allege to have been issued on

1/26/2012.

126).     That pursuant to New York Criminal Procedure Law § 140.10, defendants Meehan ,

Criollo, Sager, Gregory, et al, have the burden of providing that the arrest was authorized under

N.Y. Crim. Proc. Law § 140.10 "Under Reasonable Cause"

### AS AND FOR THE FOURTH CAUSE OF ACTION
### AGAINST DEFENDANTS VANCE, PERRY, KELLY,
### MEEHAN, CRIOLLO, SAGER, RIVERA, GREGORY, KOLAND,
### CITY OF NEW YORK MUNICIPAL CORPORATION "PERSON"

127) .     Plaintiff Robert Jones, allege re-allege and repeats the allegation contained in ¶¶ 1-10,

10-20,20-30,30-40, 40-50,50-60,60-70,70-80, 80-85,85-90, 90-100, 100-110,110-115,115-120,

120-125, 125-126 and 127. As are more fully set forth herein.

128).     On March 22, 2012. Plaintiffs "DNA" sample taken from a cup not abandoned while

held in police custody was tested against "DNA" evidence collected from  the crime scene of 616

9th Ave, Thomas Dizarmaga  for which a knife was swabbed and compared with "DNA" from the cup

134).    Plaintiff Robert Jones, repeats and re-allege the allegation contained in ¶¶ 1-10,10-20,20-

30,30-40,40-50,50-60,60-70,70-80,80-90, 90-100,100-110,110-120, 120-130, 131-133,133-134,

134-135 and136. As are more fully set forth herein .

134).    Defendants Michael Bloomberg, former City of New York, County Executive, "Mayor",

Cyrus Vance, District Attorney County of New York, Lauren Perry, Assistant District Attorney, City

of New York, Raymond Kelly, former City of New York, Police Commissioner, James Meehan # 6445,

Police Detective Mid-town North Pct, Detective Jose Criollo # 4076, Adam Sager  Tax No. 902338,

Thornton Gregory Tax No. 91777, Felix Rivera Police Lieutenant Tax No. 920765, "MTN" M. Koland

# 28952, "MTN" John Doe #_____, Property Clerk Office One Police Plaza, and City of New York,

Municipal Corporation "Person"

135).    Are by and through the title 42 U.S.C. § 1983 during all times relevant herein while

Acting with a cognizant and culpable state of mine were deliberately indifferent to the plaintiffs

Constitutional Rights as are guaranteed under the First, Fifth, Sixth, Eighth, and Fourteenth,

Amendments of the United States, and State of New York, Constitution Article One, sections one,

Three, Five, Six. Eleven, and twelve. Arising from Unlawful Detention, Deprivation of  Procedural

Due Process, Equal Protection of Law, Illegal Search and Seizure, Physical Injuries, and Mental

Anguish  loss of Property, which includes Medical Records, Mental Health Records, and Birth

Certificate, Social Security Card, Cell Phone, Clothing Pants, Hats, Shirts, Jackets, Genetic Martial

"DNA" Saliva Skin Cells, Blood, Hair Fibers, et al. confiscated by police and vouched  under  invoice

1000126265, PET No. 1300051018, felony complaint ECAB # 1306957. Not liked to any criminal

Conduct the result of any crime.

## AFFIDAVIT OF SERVICE

SATET OF NEW YORK)
COUNTY OF BROXN   ) SS;

I Robert Jones, being duly sworn depose and says:

That I have on the 14th day of May 2014. Placed and submitted the original and copy of this motion

To be mailed via the United States Postal Services through the institutional mailroom of the

George Motchan Detention Center 15-15 Hazen Street, East Elmhurst New York, 11370.

Correctional Facility: said moving papers were mailed to the following concerned parties;

Clerk's Office
United State District Court
Southern District of New York,
500 Pearl Street
New York, New York 10007.

Sworn to before me this _14_ day of May 2014.                Respectfully Submitted

*Marybeth Campfield*                                              *Robert Jon*

Marybeth Campfield
Notary Public, State of New York
No. 02CA6171492
Qualified in Nass Cty, Comm Exp 7/23/_

Robert Jones, Plaintiff Pro-se