UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------- X

ROBERT JONES,

                                                                  Plaintiff,

-against-

DETECTIVE JOSE CRIOLLO, POLICE OFFICER STEVEN
MIKONLAND, DETECTIVE JAMES MEEHAN,
LIEUTENANT FELIX RIVERA, DETECTIVE ADAM SAGER,
AND DETECTIVE GREGORY THORNTON,

                                                                  Defendants.

--------------------------------------------------------------------------- X

**DEFENDANTS'
STATEMENT OF
MATERIAL FACTS
PURSUANT TO LOCAL
CIVIL RULE 56.1**

14-CV-6402 (KPF)

        Defendants Detective Jose Criollo, Detective James Meehan, Police Officer Steven Mikonlanda, Lieutenant Felix Rivera, Detective Adam Sager, and retired Detective Gregory Thornton, by their attorney Zachary W. Carter, Corporation Counsel of the City of New York, submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York to set forth the material facts as to which defendant contends there are no genuine issues to be tried.

        1.     Plaintiff Robert Jones filed a Complaint on or about August 4, 2014, alleging, *inter alia*, that on January 27, 2012, he was falsely arrested by defendants. (See Complaint, annexed to the Declaration of Maria Fernanda DeCastro dated July 17, 2017, (hereinafter "DeCastro Decl.") as Exhibit "A.")

        2.     On January 26, 2012, and January 27, 2012, plaintiff was arrested for a series of nine burglaries that occurred between December 26, 2011 and January 24, 2012. (See NYPD Arrest Reports, annexed to DeCastro Decl. as Exhibit B.).

3. On December 27, 2011, complaining victim T.D. informed Detective James Meehan that on December 26, 2011, upon his return to his apartment located at 616 9th Avenue, New York, New York, he found his front door open. (See NYPD Complaint Follow-Up Informational Report No. 2 for Complaint No. 2011-014-14341, annexed to DeCastro Decl., as Exhibit "C"; Affidavit of James Meehan, dated July 17, 2017, annexed to DeCastro Decl., as Exhibit "D" at ¶ 3.).

4. T.D. informed detective Meehan that upon entering his apartment, he noticed that various items of his personal property were missing. (Exhibit "C"; Exhibit "D" at ¶ 4.).

5. T.D. informed Detective Meehan that the following items were missing from his apartment: 2005 Apple Macbook, 2011 Apple Macbook, Amazon Kindle, an IMac, and $600 dollars. (See NYPD Complaint Report for Complaint No. 2011-014-14341, annexed to DeCastro Decl., as Exhibit "E" p. 1; Exhibit "D" at ¶ 4.).

6. T.D. also reported that his kitchen window, which was always kept closed, was open. (See Exhibit "E" at p. 1; Exhibit "D" at ¶ 4.).

7. On December 29, 2011, Detective Meehan went to T.D.'s apartment to investigate the burglary. (See NYPD Complaint Follow-Up Informational Report No. 5 for Complaint No. 2011-014-14341, annexed to DeCastro Decl., as Exhibit "F"; Exhibit "D" at ¶ 6.).

8. While in T.D.'s apartment, Detective Meehan recovered a knife in the apartment that did not belong to T.D. (See Exhibit "F"; Exhibit "D" at ¶ 6.).

9. On December 29, 2011, Detective Meehan reviewed a video taken from a security camera at T.D.'s apartment building. (See NYPD Complaint Follow-Up Informational

Report No. 4 for Complaint No. 2011-014-14341, annexed to DeCastro Decl., as Exhibit "G"; Exhibit "D" at ¶ 8.).

10. On the video, Detective Meehan observed a black male, on one crutch, entering T.D.'s building on December 26, 2011. (See Exhibit "G"; Exhibit "D" at ¶ 8.).

11. On the video, the black male can be seen ascending the stairs to floor on which T.D.'s apartment was located. (See Exhibit "G"; Exhibit "D" at ¶ 8.).

12. The video also showed the black male, on one crutch, descend the stairs and exit the building a short while later. (See Exhibit "G"; Exhibit "D" at ¶ 8.).

13. On December 26, 2011, plaintiff had been using crutches for approximately three years. (See Transcript of the Deposition of plaintiff Robert Jones, taken on April 10, 2017, annexed to DeCastro Decl. as Exhibit "H" at 52:8–13.)

14. On January 11, 2012, complaining victim S.C. informed Detective Jose Criollo that on January 7, 2012, she returned to her apartment located at 409 West 48th Street, New York, New York, and found that her apartment had been broken into. (See NYPD Complaint Follow-Up Informational Report No. 4 for Complaint No. 2012-018-000185, annexed to DeCastro Decl., as Exhibit "I"; Affidavit of Jose Criollo, dated July 17, 2017, annexed to DeCastro Decl., as Exhibit "J" at ¶ 5.).

15. Specifically, S.C. reported that the window inside of her bedroom was opened. (See Exhibit "I"; Exhibit "J" at ¶ 6.).

16. S.C. also reported that her two Apple computers had been stolen from her apartment. (See Exhibit "I"; Exhibit "J" at ¶ 6.).

17. S.C. reported that one of the stolen laptops was a Mac Apple Laptop with a serial no. W8028H0TF5W. (See Exhibit "J" at ¶ 6; NYPD Complaint Report for Complaint No. 2012-018-000185, annexed to DeCastro Decl., as Exhibit "K" p. 2.).

18. On January 11, 2012, complaining victim B.F. reported to Detective Criollo that at 6:30 p.m., he was in his apartment at 405 West 44th Street, in New York County, when he heard a loud bang coming from his son's bedroom. (Exhibit "J" at ¶ 8; NYPD Complaint Follow-Up Informational Report No. 3 for Complaint No. 2012-018-00323, annexed to DeCastro Decl., as Exhibit "L").

19. B.F. informed Detective Criollo that when he went into his son's bedroom he observed a male black standing in the middle of the room. (See Exhibit "J" at ¶ 8; Exhibit "L").

20. B.F. informed Detective Criollo that the male black fled through a window and went up the fire escape to the roof of the building. (See Exhibit "J" at ¶ 8; Exhibit "L").

21. B.F. informed Detective Criollo that the male he observed was a male black with a goatee, approximately 20-30 years old, 5'10" tall, weighing approximately 180 pounds, and wearing a black knitted cap. (See Exhibit "J" at ¶ 8; Exhibit "L").

22. On January 11, 2012, at approximately 8:38 p.m., Detective Criollo went to B.F.'s apartment building. (See Exhibit "J" at ¶ 9.).

23. Detective Criollo conducted a rooftop canvass of 405 West 44th Street. (See Exhibit "J" at ¶ 9; NYPD Complaint Follow-Up Informational Report No. 5 for Complaint No. 2012-018-00323, annexed to DeCastro Decl., as Exhibit "PP").

24. From the roof of 405 West 44th, Detective Criollo noticed a window of an apartment located at 407 West 44th street, the building adjacent to 405 west 44th street. (See Exhibit "J" at ¶ 9; Exhibit "PP").

25. Detective Criollo went to the deck area of the apartment and knocked on the door. (See Exhibit "J" at ¶ 9; Exhibit "PP").

26. Witness J.E. answered the door. (See Exhibit "J" at ¶ 9; Exhibit "PP")

27. J.E. informed Detective Criollo that he observed a black male with crutches go up to the roof of 405 West 44th Street on January 11, 2012. (See Exhibit "J" at ¶ 9; Exhibit "PP").

28. On January 11, 2012, Police Officer Victor Lopez informed Detective Criollo about a possible burglary at 403 West 44th Street. (See Exhibit "J" at ¶ 10).

29. Officer Lopez informed Detective Criollo that while he was responding to the burglary of complaining victim B.F.'s apartment, Officer Lopez noticed an open door and an open window at apartment 5B at 403 West 44th Street. (See Exhibit "J" at ¶ 10.).

30. Officer Lopez informed Detective Criollo that he contacted the person who lived at apartment 5B at 403 West 44th Street, complaining victim K.S. (See Exhibit "J" at ¶ 10; NYPD Complaint Follow-Up Informational Report No. 2 for Complaint No. 2012-018-00324, annexed to DeCastro Decl., as Exhibit "M.").

31. Detective Criollo interviewed K.S. on January 11, 2012, at 403 West 44th Street, at approximately 8:59 p.m. (See Exhibit "J" at ¶ 11; Exhibit "M.").

32. K.S. reported to detective Criollo that when she arrived home she noticed that several cabinets that she had left closed were open. (See Exhibit "J" at ¶ 11; Exhibit "M.").

33. K.S. reported to Detective Criollo that she found a black knit hat that did not belong to her on her bedroom floor near a window. (<u>See</u> Exhibit "J" at ¶ 11; Exhibit "M.").

34. The black knitted cap was recovered and vouchered as evidence. (<u>See</u> NYPD Complaint Follow-Up Informational Report No. 1 for Complaint No. 2012-018-00324, annexed to DeCastro Decl., as Exhibit "N.").

35. The black knitted cap was submitted to the New York City Police Department Lab for DNA analysis. (<u>See</u> Exhibit "N.").

36. DNA was recovered from the black knitted hat. (<u>See</u> Office of the Chief Medical Examiner Report, annexed to DeCastro Decl., as Exhibit "O.").

37. When the DNA recovered from the black knitted hat was run through the State DNA Index System (SDIS), it resulted in a positive match with the DNA of a prior convicted offender, plaintiff Robert Jones. (<u>See</u> New York State Forensic Investigation Center Report, annexed to DeCastro Decl., as Exhibit "P.").

38. On January 11, 2012, Officer Sammon informed Detective Criollo that he when he was at the scene of the burglary of B.F.'s home, he observed a black male on crutches exit 403 West 44th Street. (<u>See</u> Exhibit "J" at ¶ 13; NYPD Complaint Follow-Up Informational Report No. 3 for Complaint No. 2012-018-00324, annexed to DeCastro Decl., as Exhibit "Q.").

39. On January 11, 2012, Detective Criollo received another similar description of an individual seen leaving K.S.'s apartment building at 403 West 44th Street. (<u>See</u> Exhibit "J" at ¶ 13.).

40. On January 11, 2012, Mayor's Office Investigator George Tsatsaronis informed Detective Criollo that he observed a black male with a goatee, on what appeared to be one crutch, exit 403 West 44th Street, on January 11, 2012. (<u>See</u> Exhibit "J" at ¶ 13.).

41. On January 12, 2012, complaining victim W.B. informed police that when he returned to his apartment at 319 West 47th Street, on January 11, 2012, he found that his apartment had been burglarized. (See NYPD Complaint Report for Complaint No. 2012-018-000338, annexed to DeCastro Decl., as Exhibit "R.").

42. Specifically, W.B. informed police that when he returned to his apartment, he found a back left window in his apartment open. (See Exhibit "R;" Exhibit "J" at ¶ 14.).

43. W.B. reported that a Nikon D50 Camera, a Nikon camera lens, a JVC MINI Camcorder, and a black camera bag were stolen from inside of his apartment at 319 West 47th Street. (See Exhibit "R"; Exhibit "J" at ¶ 14.).

44. On January 20, 2012, complaining victim D.L. reported to police that his apartment at 407 West 50th, New York, New York, had been broken into. (See NYPD Complaint Report for Complaint No. 2012-018-000533, annexed to DeCastro Decl., as Exhibit "S"; Exhibit "J" at ¶ 17.").

45. D.L. reported that he returned home to find the window over his fire escape open. (See Exhibit "S"; Exhibit "J" at ¶ 17.").

46. D.L. also reported that various items of personal property had been stolen from his apartment. (See Exhibit "S"; Exhibit "J" at ¶ 17.").

47. One of the items stolen from complaining victim D.L.'s apartment was a Mac Apple Laptop, with Serial No. C02F4CEKDH26. (See Exhibit "S"; Exhibit "J" at ¶ .").

48. On January 20, 2012, complaining victim D.D. reported that her apartment, at 407 West 50th, New York, New York, had been broken into. (See NYPD Complaint Report for Complaint No. 2012-018-000535, annexed to DeCastro Decl., as Exhibit "T"; Exhibit "J" at ¶ 18.").

49. D.D. reported that she returned home on January 19, 2012, and found her door locked with the chain from inside the apartment. (See Exhibit "T"; Exhibit "J" at ¶ 18.").

50. D.D. reported that when she gained access to her apartment she noticed the window over her fire escape was open. (See Exhibit "T"; Exhibit "J" at ¶ 18.").

51. D.D. reported that various pieces of jewelry were missing from her apartment. (See Exhibit "T"; Exhibit "J" at ¶ 18.").

52. D.D. also later reported that an Apple Ipod, bearing Serial No. 4J550HHSSZ9, had been stolen from her apartment. (See Email from D.D. to Detective Criollo, dated January 24, 2012, annexed to DeCastro Decl., as Exhibit "U"; Exhibit "J" at ¶ 18.).

53. On January 20, 2012, complaining victim J.M. also reported a burglary at his apartment, at 407 West 50th Street. (See NYPD Complaint Report for Complaint No. 2012-018-000534, annexed to DeCastro Decl., as Exhibit "V"; Exhibit "J" at ¶ 19.).

54. J.M. reported that when he returned to his apartment at 407 West 50th Street, he noticed that a window in his apartment had been opened. (See Exhibit "V"; Exhibit "J" at ¶ 19.").

55. J.M. reported that his Mac Apple Laptop, with Serial No. WQ94BCV78PW, had been stolen from his apartment on January 19, 2012. (See Exhibit "V"; Exhibit "J" at ¶ 19.).

56. On January 24, 2012, complaining victim N.F. informed police that he returned home to his apartment at 947 Amsterdam Avenue, to find that the candle that was on his living room windowsill was on the floor. (See NYPD Complaint Report for Complaint No. 2012-024-00337, annexed to DeCastro Decl., as Exhibit "W"; NYPD Complaint Report Follow-Up

Informational Report No. 1 for Complaint No. 2012-024-00337, annexed to DeCastro Decl., as Exhibit "X.")

57. N.F. informed police that, among other things, his Mac Apple Laptop and Ipad were missing from his apartment. (See Exhibit "W"; Exhibit "X.")

58. On January 24, 2012, complaining victim J.M. informed Detective Criollo that the Find My Iphone feature of his MacBook had located his computer. (See Exhibit "J" at ¶ 21; See Email from J.M. to Detective Criollo, dated January 24, 2012, annexed to DeCastro Decl., as Exhibit "Y").

59. J.M.'s laptop was activated in the vicinity of 581 Glenmore Avenue, Brooklyn, NY, 11207. (See Exhibit "J" at ¶ 21.")

60. 581 Glenmore Avenue, Brooklyn, NY, 11207 and 571 Glenmore Avenue, Brooklyn, NY, 11207, are approximately 174 feet away from each other. (See Google Map, annexed to DeCastro Decl., as Exhibit "Z.").

61. On January 24, 2012, a sketch of the individual wanted for the burglaries that occurred on January 11, 2012, was created based on two witnesses' descriptions of an individual that they saw exiting 403 West 44th Street. (See NYPD Complaint Report Follow-Up Informational Report No. 7 for Complaint No. 2012-024-00323, annexed to DeCastro Decl., as Exhibit "AA"; Exhibit "J" at ¶ 20.).

62. That sketch was turned into a wanted poster that was distributed to various precincts within the NYPD. (See NYPD Wanted Poster, annexed to DeCastro Decl., as Exhibit "BB.").

63. On January 25, 2012, Lieutenant Seamus McHugh of 77th Precinct, in Brooklyn, New York, informed Lieutenant Felix Rivera that an individual matching the sketch

was stopped by a detective from the 77th Precinct. (See Email from Seamus McHugh to Lieutenant Felix Rivera, dated January 25, 2012, annexed to DeCastro Decl., as Exhibit "CC"; Affidavit of Felix Rivera, dated July 17, 2017, annexed to DeCastro Decl., as Exhibit "DD" at ¶ 5.).

64. Lieutenant McHugh informed Lieutenant Rivera that the individual stopped by the 77th Precinct was a parolee named Robert Jones, NYSID 04757650Q. (See Exhibit "CC"; Exhibit "DD" at ¶ 5.).

65. A detective at the Midtown North Detective Squad traced plaintiff's name to an address - 571 Glenmore Ave, Brooklyn, New York, 11207. Exhibit "DD" at ¶ 6.).

66. From November 2011 to January 2012, plaintiff was a resident at 571 Glenmore Avenue. (See Exhibit "H" at ¶ 11:3–14.).

67. 571 Glenmore Avenue was a halfway house. (See Exhibit "H" at ¶ 11:5-12:12; Exhibit "DD" at ¶ 8).

68. At 571 Glenmore Avenue, plaintiff shared a room with three other individuals. (See Exhibit "H" at 12:21-25.).

69. On January 25, 2012, at approximately 10:45 p.m., Defendants Detective Thornton and Lieutenant Rivera responded to 571 Glenmore Avenue, in Brooklyn, New York. (See Exhibit "DD" at ¶ 7; Declaration of Gregory Thornton, dated July 13, 2017, annexed to DeCastro Decl., as Exhibit "EE" at ¶ 2-3.).

70. Non-party Detective Robert Hahn also responded to 571 Glenmore Avenue, in Brooklyn, New York, on January 25, 2012. (See Exhibit "DD" at ¶ 7; Exhibit "EE" at ¶ 3.).

71. Defendants Thornton and Rivera, and non-party Detective Hahn, received permission from the house manger at 571 Glenmore Ave, in Brooklyn, NY, to enter the halfway house. (See Exhibit "DD" at ¶ 8; Exhibit "EE" at ¶¶ 7-8.).

72. Detective Thornton and Detective Hahn were led up to plaintiff's room on the 2nd floor by the manager of the halfway house. (See Exhibit "DD" at ¶ 9; Exhibit "EE" at ¶ 8.).

73. Detective Hahn observed plaintiff sitting on the left bunk bed in a 2nd floor bedroom using one of the computers that was reported as stolen. (See Search Warrant Affidavit, annexed to DeCastro Decl., as Exhibit "FF".).

74. Detective Hahn also observed various other electronics around plaintiff's room and observed plaintiff using crutches. (Exhibit "FF".).

75. Plaintiff was then transported to the Midtown North Precinct for questioning. (See Exhibit "DD" at ¶¶ 11-12; Exhibit "EE" at ¶¶ 11-12.).

76. On January 26, 2012, in a line-up procedure, complaining victim B.F. identified plaintiff as the individual that he saw inside of his apartment on January 11, 2012. (See Exhibit "J" at ¶¶ 23-25.).

77. On January 26, 2012, non-party Detective Robert Hahn obtained a search warrant to search plaintiff's room at 571 Glenmore Avenue. The Honorable Armstrong, of the New York County Supreme Court, issued the search warrant authorizing the search of Plaintiff's room at 571 Glenmore Avenue. (See Search Warrant, dated January 26, 2012, annexed to DeCastro Decl., as Exhibit "GG".).

78. Defendants Thornton, Rivera, and Sager executed the search warrant on January 26, 2012, at approximately 6:00 p.m. (See Exhibit "DD" at ¶ 14; Exhibit "EE" at ¶ 14;

Declaration of Adam Sager, dated July 17, 2017, annexed to DeCastro Decl., as Exhibit "HH" at ¶ 3.).

79. Complaining victim S.C.'s Mac Apple Laptop, with Serial No. W8028H0TF5W, was recovered inside of plaintiff's room 571 Glenmore Avenue. See NYPD Property Clerk Invoice No. 1000126240, annexed to DeCastro Decl., as Exhibit "II").

80. Complaining Victim D.L.'s Mac Apple Laptop, with Serial No. C02F4CEKDH26, was recovered underneath plaintiff's bed on January 26, 2012. (See Exhibit "HH" at ¶ 7; Exhibit "II").

81. Complaining victim D.D.'s Ipod, with Serial No. 4J550HH5SZ9, was recovered underneath plaintiff's bed on January 27, 2012. (See Exhibit "HH" at ¶ 10; See NYPD Property Clerk Invoice No. 1000126258, annexed to DeCastro Decl., as Exhibit "OO").

82. Complaining victim J.M.'s Mac Apple Laptop, with Serial No. WQ94BCV78PW, was recovered underneath plaintiff's bed on January 26, 2012. (See Exhibit "HH" at ¶ 9; Exhibit "II.").

83. Complaining Victim N.F.'s Mac Apple Laptop, with Serial No. W86449E0W06 was recovered underneath plaintiff's bed on January 26, 2012. (See Exhibit "HH" at ¶ 8; Exhibit "II.").

84. On January 26, 2012 and January 27, 2012, while at the Midtown North Precinct, plaintiff was arrested for nine burglaries. (See NYPD Arrest Reports, annexed to DeCastro Decl. as Exhibit B.).

85. On January 27, 2012, Officer Mikolanda transported plaintiff from the Midtown North Precinct to Bellevue Hospital for medical clearance. (See Affidavit of Steven Mikolanda, dated July 13, 2017, annexed to DeCastro Decl., as Exhibit "JJ" at ¶¶ 3-4.).

86. Plaintiff needed medical clearance because the crutches he was utilizing were going to be vouchered as arrest evidence. (See Exhibit "DD" at ¶¶ 17-18.).

87. Plaintiff was seen at Bellevue Hospital at approximately 1:13 p.m., on January 27, 2012. (See Plaintiff's Bellevue Hospital Medical Records, annexed to DeCastro Decl. as Exhibit "KK" at p. 2.).

88. While at Bellevue Hospital plaintiff did not complain of abdominal pain. (See Exhibit "KK.").

89. While at Bellevue Hospital plaintiff also did not complain of high blood pressure. (See Exhibit "KK.").

90. At Bellevue Hospital plaintiff only complained of pain to his knee due to a prior surgery. (See Exhibit "KK.".).

91. Plaintiff also reported a history of Post-Traumatic Stress Disorder. (See Exhibit "KK.".).

92. On or about January 27, 2012, the New York County District Attorney's Office charged plaintiff with Nine Counts Burglary in the Second Degree and Eight Counts of Criminal Possession of Stolen Property in the Fifth Degree. (See Criminal Court Complaint annexed to DeCastro Decl., as Exhibit "LL.").

93. The criminal complaint was executed by Detective Jose Criollo. (See Criminal Court Complaint annexed to DeCastro Decl., as Exhibit "LL.").

94. None of defendants Mikolanda, Meehan, Rivera, Sager, or Thornton signed the criminal court complaint. (See Exhibit "LL.").

95. On or about February 1, 2012, plaintiff was indicted by a Grand Jury. (See Certificate of Grand Jury Action, annexed to DeCastro Decl., as Exhibit "MM.").

96. On November 14, 2013, plaintiff's criminal case was dismissed. (See Supreme Court Certificate of Disposition, annexed to DeCastro Decl., as Exhibit "NN.").

97. On April 24, 2014, the City of New York received a Notice of Claim from plaintiff related to plaintiff's arrest on January 25, 2012. (See Notice of Claim, annexed to DeCastro Decl., as Exhibit "QQ.").

Dated: New York, New York
      July 17, 2017

                        ZACHARY W. CARTER
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants Criollo, Meehan,*
                        *Mikolanda, Rivera, Sager, and Thornton*

      By:         /s/
                        Maria Fernanda DeCastro
                        *Assistant Corporation Counsel*
                        Special Federal Litigation Division
                        100 Church Street, Room 3-180
                        New York, New York 10007
                        (212) 356-2658

To:    BY FIRST-CLASS MAIL
        Robert Jones
        #141-15-02468
        Robert N. Davoren Complex
        11-11 Hazen Street
        E. Elmhurst, NY 11370

14-CV-6402 (KPF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT JONES,

                                                  Plaintiff,

-against-

DETECTIVE JOSE CRIOLLO, POLICE OFFICER STEVEN MIKONLAND, DETECTIVE JAMES MEEHAN, LIEUTENANT FELIX RIVERA, DETECTIVE ADAM SAGER, AND DETECTIVE GREGORY THORNTON,

                                                  Defendants.

# DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendant Reo*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Maria Fernanda DeCastro*
*Tel: (212) 356-2658*

*Due and timely service is hereby admitted.*

*New York, N.Y. ............................................... , 2016......*

*............................................................................... , Esq.*

*Attorney for.........................................................................*